CLARE E. CONNORS #7936
United States Attorney
District of Hawaii

MOHAMMAD KHATIB
Assistant U.S. Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii   96850
Telephone: 541-2850
Facsimile: 541-2958
E-mail: Mohammad.Khatib@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CR. NO. 23-00101 HG |
| | ) | |
| vs. | ) | UNITED STATES' RESPONSE IN |
| | ) | OPPOSITION TO DEFENDANT'S |
| KALANA LIMKIN, | ) | MOTION TO REOPEN DETENTION |
| | ) | HEARING; CERTIFICATE OF |
| Defendant. | ) | SERVICE |
| | ) | |

UNITED STATES' RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO REOPEN DETENTION HEARING

The United States, through its attorney, Clare E. Connors, United

States Attorney for the District of Hawaii, respectfully submits the following

response in opposition to the defendant's motion to reopen his detention [ECF No.

23].   For all of the reasons set forth below, there is no combination of conditions that will reasonably assure the defendant's presence at future proceedings or the safety of the community, including placement at the work-stay property run by third-party custodian Rick Gristock proffered by the defense; thus, the defendant should remain detained.

## I. PROCEDURAL HISTORY

The defendant was arrested and taken into federal custody on December 14, 2023.   He was charged in a criminal complaint with receipt and distribution of child pornography in violation of Title 18, United States Code, Section 2252(a)(2).   [ECF No. 1].   The United States moved to detain the defendant pending trial and a hearing was held before United States Magistrate Judge Rom Trader on December 21, 2023.   Judge Trader ordered that the defendant be detained.   [ECF No. 14].

In his written order, Judge Trader found that "there is no condition or combination of conditions that will reasonably assure the appearance of the defendant as required or mitigate the risk of danger to the community, if released." [ECF No. 17].   The Court further found that the "[w]eight of evidence against the defendant is strong," that he was subject to a "lengthy period of incarceration if convicted," and lacked "financially responsible sureties."   [*Id.*].

Also on December 21, 2023, a grand jury returned an indictment charging the defendant with possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B).   [ECF No. 11].   The defendant was arraigned and pleaded not guilty to the charge on December 27, 2023.   [ECF No. 19].   The charge includes a specific allegation that the defendant possessed images and videos of child pornography involving prepubescent minors and minors who had not attained 12 years of age.   If proven, that allegation increases the statutory maximum penalty from 10 years to 20 years of imprisonment.   *See* 18 U.S.C. § 2252A(b)(2).

## II. LEGAL STANDARD

The Court may reopen a detention hearing "if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."   18 U.S.C. § 3142(f)(2).   A defendant must be detained pending trial where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."   18 U.S.C. § 3142(e)(1).   Detention is thus appropriate where a defendant is either a danger to the community or a flight risk.

3

*United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).

Categorical grants or denials of bail, untethered from an individualized determination, are impermissible. *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). That is because "the Bail Reform Act mandates an individualized evaluation guided by the factors articulated in § 3142(g)." *Id.* Those factors are: (1) the "nature and circumstances of the offense charged, including whether the offense is a crime of violence"; (2) the "weight of the evidence against" the individual; (3) the "history and characteristics" of the individual, including his "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986). Consideration of non- statutory factors is disfavored. *Diaz-Hernandez*, 943 F.3d at 1199. In this case, the United States bore the burden of showing that the defendant poses a danger to the community by clear and convincing evidence, and it bore the burden of showing that a defendant poses a flight risk by a preponderance of the evidence. *United States v. Gebro*, 948 F.2d 1118, 1120 (9th

Cir. 1991).

## III. ARGUMENT

### A.   The Defendant Fails To Present Information That Has A Material Bearing On His Detention.

The defendant has failed to present new information that "has a material bearing" on whether there are conditions of release that will reasonably assure his appearance at trial and the safety of any other person and the community. According to the defendant, he has secured accommodations at a work-stay property on the Big Island owned by Rick Gristock who is willing to be a third-party custodian. The defendant claims that although Mr. Gristock has the internet, it is password protected and the defendant would not be able to access it. The defendant also says that his mother, who also lives at the work-stay property, can provide support and can serve as an additional third-party custodian. The defendant further argues that his brother is also available for support. Beyond working 8 to 12 hours per week at the work-stay, the defendant intends to get his driver's license, a part-time job, study and attend behavioral therapy while on release.

The defendant's proposed placement with a third party custodian has little bearing, much less a "material bearing," on whether conditions for release exist. As detailed further below, the defendant is the founder of a group that uses Discord and other social media platforms to victimize vulnerable populations through sharing

5

extreme gore and child sexual abuse material ("CSAM").   The defendant is extremely tech savvy.   He ran his own Discord server, "Cultists," for which he programmed bots—software programs that operate on the internet and perform automated tasks.   Given his technical knowledge, the defendant could easily gain access to Mr. Gristock's internet.   Even more easily, he could obtain a smartphone to access the internet.

The involvement of the defendant's mother and brother of no consequence to the issue of his release.   The defendant was living with his mother at the time of the instant offense and he was seen with his brother during investigative surveillance.   The defendant was thus committing crimes under their noses or with their knowledge and acquiescence.   Whatever the case, his family cannot stop him from accessing the internet or otherwise police his behavior. Accordingly, the Court should not reopen the detention hearing nor reconsider Judge Trader's prior detention order on the basis of the defendant's proposed work-stay plan.

**B.    Detention Is Appropriate As The Defendant Is A Danger To The Community**

Even if this Court were to reopen the issue of detention, there is no condition or combination of conditions that can reasonably assure the defendant's appearance at trial and the safety of the community if he were released.   The

nature and circumstances of this case are disturbing.   Possession of child pornography is a heinous crime that victimizes the most vulnerable members of society.   And it carries serious penalties, including a sentence of imprisonment of up to 20 years.

The defendant's conduct goes far beyond the sexual exploitation of children.   He adheres to the beliefs of a group known as "764."   That group is a radical offshoot of a satanic anarchist group, The Order of Nine Angles ("O9A"), which espouses the belief that society must be destroyed from within.   O9A encourages members to engage in criminal acts, including violence, sexual assault, murder, and terrorism, to accelerate and cause the demise of western society. O9A advocates rape and sexual assault as a means of asserting domination, breaking social norms, and propagating the expansion of the white race.

"764" represents a radical shift in the group to specifically target children and use CSAM and videos depicting animal cruelty, self-harm, and other acts of violence to accelerate chaos in society.   Members of "764" work in concert with one another towards a common purpose of destroying civilized society through the corruption of youth.   Vulnerable underage populations across the country and across the globe are methodically identified by members of "764" and victimized both individually and as a group.   The group functions together as a

7

coordinated unit by using Discord and Telegram as vessels to desensitize vulnerable populations through sharing extreme gore and CSAM, with the purpose of breaking down societal norms and normalizing explicit material to corrupt minors and groom them towards future violence.   Individual victims are often targeted through synchronized group chats, as the group will use publicly available platforms, such as social media sites or mobile applications like Discord and Telegram, to conduct coordinated extortion and blackmailing of minor victims to comply with the demands of the group.   These demands vary between live streams or uploading of videos of self-harm, CSAM, harm to animals, sexual exploitation of siblings, acts of random violence, suicide, murder, and other acts of violence. Members of the group threaten to share sexually explicit videos or photos of the minor victims with their family, friends, and/or post to the internet.   The group will then commonly edit compilation videos of their victims and share these videos on their servers to gain notoriety and spread fear, all for the purpose of accelerating chaos under in furtherance of 764's beliefs.

The defendant is not only an adherent to the beliefs of "764," he is the founder of the splinter group, "Cultist."   "Cultists focuses on, among other things, promoting child pornography, child exploitation, sexual extortion, and trafficking, animal cruelty and self-harm of minors.   Beyond finding vile depictions of child

8

pornography in the defendant's possession, investigators have also discovered a video of the defendant and another cohort exhorting a third person to commit suicide online.   When that attempt failed, the defendant remarked that he would have future opportunities to try again.   Plainly, the defendant's release would endanger the community.

The weight of evidence against the defendant is substantial.   The defendant has in fact confessed to the crime of possessing child pornography.   He further admitted to creating "Cultist," which he acknowledged promotes self-harm and cutting.   The defendant also admitted that he had asked minor females to send him nude photographs of themselves.   This evidence demonstrates the United States' case against the defendant is formidable, making the defendant's conviction quite likely.

The defendant has not been a model inmate while in custody.   The defendant has twice been sanctioned for phone abuse.   On April 7, 2024, the defendant was caught allowing another inmate to place telephone calls using his phone line.   The defendant admitted to the violation, but claimed he didn't know it was against the rules.   He lost his commissary and phone privileges for 30 days.   On June 28, 2024, the defendant was caught using his phone line on multiple occasions throughout the day to speak to someone on behalf of another inmate.

9

He admitted the conduct to the investigator, but he denied it at his disciplinary hearing.   He was placed in disciplinary segregation for 11 days and lost his phone privileges for 30 days.   The defendant would perhaps have an easier time in prison if he stopped violating the rules of his facility.   In any event, his misconduct in custody indicates that he will not abide by the Court's conditions if released.

## IV. CONCLUSION

For the foregoing reasons, the Court should deny the defendant's motion to reopen his detention hearing.

DATED:   August 9, 2024, at Honolulu, Hawaii.

CLARE E. CONNORS
United States Attorney
District of Hawaii

By /s/ Mohammad Khatib
    MOHAMMAD KHATIB
    Assistant U.S. Attorney

United States v. Kalana Limkin
"United States' Response in Opposition to Defendant's Motion to Reopen Detention Hearing"
Cr. No. 23-00101 HG

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on the date noted below, a true and correct copy of the foregoing was served electronically on counsel of record through the District Court's electronic filing system.

DATED: August 9, 2024, at Honolulu, Hawaii.

*/s/ Mohammad Khatib*
MOHAMMAD KHATIB
Assistant United States Attorney