KENNETH M. SORENSON
United States Attorney
District of Hawaii

MOHAMMAD KHATIB
Assistant United States Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
E-mail: Mohammad.Khatib@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>KALANA LIMKIN,<br><br>Defendant. | CASE NO. CR 23-00101-HG<br><br>UNITED STATES' SENTENCING MEMORANDUM; CERTIFICATE OF SERVICE<br><br>Sentencing Date: May 12, 2026<br>Time: 1:30 p.m.<br>Judge: Hon. Helen Gillmor |

<u>UNITED STATES' SENTENCING MEMORANDUM</u>

## TABLE OF CONTENTS

**Page**


BACKGROUND ..... 2

I. Procedural History ..... 2

II. Summary of the Offense Conduct ..... 2

A. Nihilistic Violent Extremism ..... 3

B. Defendant Limkin's Leadership Role ..... 4

THE SENTENCING GUIDELINES CALCULATION ..... 5

I. The Advisory Guidelines Range ..... 6

THE RELEVANT SECTION 3553(A) FACTORS ..... 8

I. The Nature and Circumstances of the Offense, and the Seriousness of the Offense ..... 9

II. The Defendant's History and Characteristics ..... 12

III. The Need for Deterrence ..... 16

IV. The Need to Avoid Unwarranted Sentence Disparities ..... 17

CONCLUSION ..... 19

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Gall v. United States*,
552 U.S. 38 (2007) .......... 7

*Kimbrough v. United States*,
552 U.S. 85 (2007) .......... 9

*Nelson v. United States*,
555 U.S. 350, 351 (2009) .......... 9

*United States v. Booker*,
543 U.S. 220 (2005) .......... 7

*United States v. Carty*,
520 F.3d 984 (9th Cir. 2008) .......... 7

*United States v. Hilgers*,
560 F.3d 944 (9th Cir. 2009) .......... 14

**Statutes and Rules** **Page(s)**

18 U.S.C. § 2252A .......... 2, 8

18 U.S.C. § 3553 .......... *passim*

18 U.S.C. § 3661 .......... 3

U.S.S.G. § 2G2.2 .......... 8

U.S.S.G. § 3A1.4 .......... 12

U.S.S.G. § 3E1.1 .......... 8

U.S.S.G. § 5H1.1 .......... 15

U.S.S.G. § 5H1.3 .......... 15

U.S.S.G. § 5H1.12 .......... 16

For years, Kalana Limkin (hereinafter, "the defendant" or "Limkin") led "Cultist," a vile online chat room promoting a nihilistic violent extremist ("NVE") ideology. "Cultist became a well-known and highly recognizable brand within the larger NVE ecosystem in part due to … the shock value of the content and activities within its servers and digital spaces." ECF No. 84-1 at 17. Through Cultist, Limkin encouraged children to cut themselves, publicly engage in depraved sexual acts, and livestream their own suicides. Cultist normalized the possession, production, and sharing of child sexual abuse and gore material to groom children toward future violence. Members of Cultist worked in concert with one another to corrupt and exploit children, with the goals of destroying civilized society, fomenting civil unrest, and ultimately collapsing the current world order, including the United States Government. Members of these communities, including Limkin, kept, shared, and bragged about having CSAM, as well as pictures and videos of children cutting and abusing themselves. Such materials were treated as trophies, social currency, and leverage to extort children into a cycle of continuous abuse. Limkin's victimization of marginalized youth and complete disregard for human life are some of the most repugnant behaviors this prosecutor has observed in over a decade of work. In sum, this is not a mine run child pornography case. Limkin operated in a world far more sinister. For the reasons discussed below, and considering the relevant sentencing factors in 18

U.S.C. § 3553(a), the defendant's criminal conduct justifies a custodial sentence of ten years—the statutory maximum and, ultimately, a below-Guidelines sentence.

## BACKGROUND

### I. Procedural History

Limkin was arrested and a Criminal Complaint was filed charging him with child pornography offenses on December 14, 2023. ECF No. 1. Following a detention hearing held on December 21, 2023, Limkin was ordered detained pending trial. ECF No. 14. A federal grand jury sitting in the District of Hawaii returned the original Indictment charging Limkin the same day. ECF No. 11. The charges were subsequently amended, culminating in the return of a Second Superseding Indictment ("SSI") on February 13, 2025, charging Limkin with possession of child pornography, in violation of Title 18, United States Code, Sections 2252A(a)(5)(B) and 2252A(b)(2). ECF No. 54. Limkin pleaded guilty to the charge without a plea agreement the same day. ECF No. 59.

### II. Summary of the Offense Conduct

The charge in the SSI is part of a broader course of depraved conduct connected to the defendant's belief in nihilistic violent extremism ("NVE") and his creation of a Discord server group called "Cultist" to manifest and advance that ideology. Limkin's belief in NVE and Cultist's status in that network constitute

relevant conduct that falls within the types of evidence the Court should consider in imposing its sentence. *See* 18 U.S.C. §§ 3553(a), 3661.

### A. **Nihilistic Violent Extremism**

Sexually exploiting children and manipulating or extorting them to commit acts of extreme self-harm were Limkin's means to express, in action, his commitment to "the Community," an ecosystem of like-minded networks and groups that foment NVE ideology. PSR ¶¶ 8-10.[1] NVE adherents, like Limkin, prey on marginalized communities, particularly minors. PSR ¶ 9. Child exploitation and child pornography offenses are not a coincidence but a facet of membership in the Community:

> [T]he Community seeks to accelerate the collapse of society by inducing psychological or physical distress in youth and/or radicalizing them into carrying out self-oriented and externally oriented acts of violence. These behaviors are often defined by forced or extorted acts of extreme self-harm (e.g., cutting the abuser's name deeply into the victim's skin with the intent for it to permanently scar), violence towards pets and siblings (e.g., harming or killing pets and sexually abusing siblings), as well as the consumption, creation, and dissemination of extreme gore digital content or CSAM, and more. The targeted individuals are also compelled to record or livestream sexual or abusive or violent acts for a live audience in dedicated group chats. The saved recordings and witnessed acts serve as coercive materials to compel additional creation and consumption cycles of such content and are intended to desensitize targeted

---

[1] For an in-depth discussion of the Community and NVE ideology, see Matthew Kiner's Sentencing Aggravation Report. ECF No. 84-1.

> individuals and push them along a pathway of increasingly egregious and terroristic behaviors.

PSR ¶ 10. Limkin acknowledged that he solicited minors to produce child pornography because Cultist competed with other servers in the Community to have "the most fucked up shit." ECF No. 84-6 at 12.[2] Simply put:

> Climbing the ranks [of the Community] requires engaging in the harm of others through grooming, coercion, and the other behaviors listed. The more one can claim and demonstrate through archives of those abuses (lore books), the more power they hold over the networks and individuals.

PSR ¶ 12. And so it was with Limkin. He weaponized "digital spaces" to "push and extort" the young and vulnerable members of our society "to engage in acts of self-mutilation, sexualized violence against others, [and] suicide," all to gain notoriety within a network of individuals who seek to destabilize society, cause social unrest, and accelerate the downfall of the current world order. *See* PSR ¶ 11.

**B. <u>Defendant Limkin's Leadership Role</u>**

Limkin wasn't just a member of the Community; he was a founder and ringleader of Cultist. PSR ¶¶ 12, 36; ECF No. 84 at 7. With his technical savvy, Limkin used sophisticated means to lure underage girls to be groomed for

[2] Pinpoint citations correspond to the pagination applied to filings by the CM/ECF system.

exploitation through bots he designed for this purpose.[3] PSR ¶ 42; ECF No. 84 at 7. For Limkin, leading Cultist was a calling. He spent his time becoming infamous in the Community for running the chat rooms where he and others exploited and abused children. "[F]or prolonged periods of time (up to two years by his account), it was all that he would do." ECF No. 84-1 at 19. Limkin raided other NVE Discord servers in a sick battle for dominance. ECF No. 84 at 7-8. He was explicit about his intent to groom children, writing that Cultist was a "grooming" venture and server. ECF No. 84 at 6-7. Through Cultist, Limkin created "intense pressure chambers" where he and other predators subjugated and broke children. Limkin's membership in the Community, leadership of Cultist, and his creation and use of heinous child sexual abuse and self-harm material to "climb the ranks," takes this case well outside the heartland of child exploitation crimes.

## THE SENTENCING GUIDELINES CALCULATION

The United States Probation Office ("USPO") issued a draft PSR on April 10, 2025. ECF No. 62. The United States filed sentencing statements on August 8, 2025 (ECF No. 64), and on February 4, 2026 (ECF No. 80). The United States' objections to the Guidelines calculations have all been resolved to its satisfaction.

[3] A "bot script" typically refers to a piece of software that runs automated tasks according to its programming.

The defendant filed a sentencing statement on March 18, 2026. ECF No. 83. In relation to the Guidelines calculations, he objected to the application of five sentencing enhancements under § 2G2.2. *Id.* at 6-18. Those are: (i) the two-level increase under § 2G2.2(b)(2) for material involving a minor under the age of twelve years old; (ii) the five-level increase under § 2G2.2(b)(3) for distribution;[4] (iii) the four-level increase under § 2G2.2(b)(4) for material portraying the sexual abuse or exploitation of an infant or toddler; (iv) the two-level increase under § 2G2.2(b)(6) for use of a computer; and (v) the two-level increase under § 2G2.2(b)(7)(A) for offense involving more than 10 but fewer than 150 images. Draft PSR ¶¶ 63-67. The United States responded to those objections in a Second Supplemental Sentencing Statement filed on April 9, 2026. ECF No. 84. The final PSR, which contains the parties' objections and the USPO's responses thereto, was filed on April 13, 2026. ECF No. 85. In it, the USPO maintains that all the enhancements disputed by the defendant apply.

## I. <u>The Advisory Guidelines Range</u>

It is well-established that a court should consider a variety of factors in imposing a sentence on a criminal defendant, including the applicable range

[4] The USPO ultimately agreed with the United States' position that the defendant's conduct warranted a 7-level increase because the distribution was intended to persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct. *See* PSR ¶ 64.

established by the Guidelines. 18 U.S.C. § 3553. Although the Guidelines and policy statements are advisory in nature, courts "must consult those Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 264 (2005). A sentencing court thus begins by calculating the applicable Guidelines range, which serves as "the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007); *see also United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (the Guidelines are the starting point for a district court in determining a reasonable sentence). The court then must consider the sentencing factors set forth in 18 U.S.C. § 3553(a), including the nature and circumstances of the offense and the history and characteristics of the defendant. *See Nelson v. United States*, 555 U.S. 350, 351 (2009) (explaining that after the court determines the applicable Guidelines sentencing range, it must "consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors").

The United States Probation Office has calculated the defendant's Sentencing Guidelines as follows:

| **SENTENCING GUIDELINES CALCULATIONS<br>18 U.S.C. § 2252A(a)(5)** | |
|---|---|
| Base Offense Level – 18 U.S.C. § 2252A(a)(5) Offense (U.S.S.G. § 2G2.2(a)(1)) | 18 |
| Material Involved Prepubescent Minor or Minor Under 12 (U.S.S.G. § 2G2.2(b)(2)) | +2 |
| Offense Involved Distribution to a Minor Intended to Induce Minor to Engage in Prohibited Sexual Conduct (U.S.S.G. § 2G2.2(b)(3)(E)) | +7 |
| Offense Involved Material Portraying Sexual Abuse of Infant (U.S.S.G. § 2G2.2(b)(4)) | +4 |
| Offense Involved Use of a Computer (U.S.S.G. § 2G2.2(b)(6)) | +2 |
| Offense Involved At Least 10 Images, But Fewer Than 150 (U.S.S.G. § 2G2.2(b)(7)(A)) | +2 |
| *Adjusted Offense Level* | *35* |
| | |
| Chapter Three Acceptance of Responsibility Adjustment (U.S.S.G. § 3E1.1) | -3 |
| | |
| **TOTAL OFFENSE LEVEL** | **32** |
| **Criminal History Category I** | |
| **121-151 Months of Imprisonment** | |
| **120-Month Statutory Maximum** | |

The USPO has correctly calculated the Guidelines. To the extent that the defendant maintains his policy-, age-, and sufficiency of the evidence-based objections to the enhancements at sentencing, the Court should overrule them for the reasons provided in the United States' Second Supplemental Sentencing Statement and in the Addendum to the final PSR.

## <u>THE RELEVANT SECTION 3553(a) FACTORS</u>

The advisory Guidelines range is only one of several factors that this Court

must consider when imposing a sentence consistent with 18 U.S.C. § 3553(a). *See Kimbrough v. United States*, 552 U.S. 85, 90 (2007). The other factors include the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and deter criminal conduct; and the need to avoid unwarranted disparities in sentencing. 18 U.S.C. § 3553(a). Based on these factors, the United States submits that a custodial sentence of 120 months is the appropriate sentence in this case.

## I. The Nature and Circumstances of the Offense, and the Seriousness of the Offense

The nature and circumstances of the defendant's conduct, and the need to promote respect for the law and provide just punishment, *see* §§ 3553(a)(1), 3553(a)(2)(A), warrant a 120-month sentence here. As described in detail in the PSR, the defendant's conduct in this case was particularly outrageous.

Limkin was the ringleader of "Cultist," a primarily Discord-based chatroom, through which he promoted his own brand of NVE, bent on the destruction of society through the corruption of its youth. PSR ¶¶ 8-9. Limkin dehumanized minors on Cultist in service of his extremist views and to elevate his own glory in the wider NVE "Community." PSR ¶¶ 8-12. He preyed on marginalized children, some of the most vulnerable members of our society. PSR ¶¶ 21, 36, 40. As Limkin explained to one of his victims, he "took advantage of the mentally

unstable because they were easy to manipulate." PSR ¶ 40. Beyond any argument, the images and videos recovered from Limkin confirm the profound gravity of this offense. PSR ¶¶ 20, 26, 29-34.

Limkin not only possessed child pornography images, he peddled and produced them too. PSR ¶¶ 15-17, 20, 24, 35-36, 44. And his depravity was not limited to child pornography. Limkin also wanted kids to physically hurt themselves, both for his morbid entertainment and as a permanent mark of his prestige. PSR ¶¶ 9, 12, 17, 21, 30, 35-36, 39, 44. His productions were the grisly trophies of his sadistic success, reinforcing the cycle of victimization central to Cultist's existence. PSR ¶¶ 10, 12, 17, 20, 29, 35, 39-41.

This case demonstrates how modern communications technology has eroded the historic distinction between "hands on" predators and people like Limkin. Those who reach out over Discord and persuade, coerce, and extort children into abusing themselves are in many ways worse. *See* PSR ¶ 11 ("These digital spaces become intense pressure chambers wherein group chat members collectively push and extort targeted youth to engage in acts of self-mutilation, sexualized violence against others, suicide, or acts of violence such as randomized assault and murder."). Screen recorded extortion videos, like the ones described in Exhibits C (ECF No. 84-3) and D (ECF No. 84-4) of the United States' Second Supplemental Sentencing Statement, reveal who Limkin is. *See* 18 U.S.C. § 3553(a)(1). They

demonstrate how he extorted minors, sometimes with their own sexual abuse material, to convince them to commit suicide. They also recount, in Limkin's own words, how he derived his sense of self-worth from controlling others and gaining notoriety in causing human suffering. As Limkin told one of his victims, he "felt a sense of power because people always did what he asked." PSR ¶ 40. Likewise, Limkin revealed his need for glory within the Community. Believing he had accomplished his goal of recording "black_kat" committing suicide online, he boasted, "we just got an ugly bitch to kill herself[,] vib you got nothing on us."[5] ECF No. 84-4 at 4.

Limkin's misconduct continued for years, it was not a singular "mistake" (*see* PSR ¶ 60) or a momentary lapse in judgement, as he would have the Court believe. Rather, he engaged in a sustained pattern of abuse involving multiple victims and numerous images. The defendant knew his conduct was not only wrong, but illegal. That is why he offered to pay one of his victims $6,000 if she did not report him to the police. PSR ¶ 41. It may also explain why he appears to have deleted most of the child pornography images on his devices shortly before he turned 18, thinking, perhaps, that his age would shield him from prosecution. PSR ¶ 27. To be clear, Limkin had not turned over a new leaf; he was just covering his tracks. He continued to store child pornography images on seemingly anonymous

[5] "Vib," here, refers to Vibiq, a co-founder of Cultist. PSR ¶ 36.

cloud-based file storage accounts with Mega, opening at least one after he turned 18. PSR ¶ 76-76a.

Simply put, the defendant's crime is serious, and it demands a correspondingly serious response. This case falls so far outside the mine run of typical child exploitation cases that the 18 U.S.C. § 3553(a) factors, and U.S.S.G. § 3A1.4, Application Note 4, would demand an upward variance and departure, but for the statutory cap. The Court must stand firmly against such venal conduct as that exhibited by the defendant here. The Court's sentence should similarly reflect the need to promote respect for the law and provide just punishment for the offense. *See* 18 U.S.C. § 3553(a)(2)(A).

## II. **The Defendant's History and Characteristics**

The defendant's history and characteristics also justify a 120-month sentence. Limkin fed on the vulnerability, despair, and isolation of other children to fill the void in his own soul. He coerced kids to engage in gory and sexually explicit acts, leading an online community that thrived on child abuse. His victimization of children showed few, if any, limits.

He showed one minor victim an image of a 5-year-old girl getting raped to desensitize her. PSR ¶ 20. He sent naked pictures of her to her friends and attempted to groom her by making her take nude photos of her younger siblings. PSR ¶ 17.

Another of Limkin's minor victims was clearly suffering from mental illness; a vulnerability he readily exploited because people like her "were easy to manipulate." PSR ¶ 36, 40. He coerced her into carving his bloody fan sign deep into her skin and documenting her own abuse. PSR ¶ 39. He also extorted her with nude photographs to control her. PSR ¶ 41.

Worst of all, Limkin extorted kids to coerce them into committing suicide in his chat rooms. PSR ¶ 30; ECF No. 84 at 4. In both incidents of which the United States is aware, Limkin's own words shine a light on the darkness within him. In the first incident, he both cajoled and reassured the victim that suicide was a necessary escape:

> It's either this or having your entire life being ruined and at this point you know you're not going to have any type of future you know that right? It's ok, it's okay to give up ... alright ... its okay to move on.

ECF 84-3 at 3. When the victim refused to buckle and managed to extricate herself from this "pressure chamber," Limkin reminded the other members in the chat, "there are other girls to do stuff with[,] it doesn't matter." ECF 84-3 at 7. True to his word, Limkin made at least one other attempt. In that incident, he stressed the importance of memorializing the suicide:

> This is important alright. I need her on VC so we can fucking record this. That's all I care about.

ECF No. 84-4 at 3. And to cast aside any doubts as to the coercive means by which he sought to achieve his goal, Limkin announced to the video group chat:

> We want her to die. Yes, we do. That's the whole point of this. I threatened to leak everything.

*Id.* By "everything," Limkin meant a video he captured of his victim engaging in bestiality, which he did in fact leak. *Id.* at 3-4. Limkin has thus demonstrated his character in both word and deed.

Limkin's expressions of remorse appear half-hearted, more focused on the consequences of his actions for himself and his family than on victim impact. PSR ¶ 56. This factor, too, counsels in favor of a 120-month sentence. *See United States v. Hilgers*, 560 F.3d 944, 948 (9th Cir. 2009) (among other factors, lack of remorse justified defendant's above-Guidelines sentence). Perhaps that is because Limkin is incapable of truly appreciating the severe harm he caused his victims through his leadership role in Cultist. *See* PSR ¶ 57 (describing Cultist as "a space where [teenagers] felt included and that they mattered" when, in fact, it was a "pressure chamber" that victimized the youth), ¶ 58 (claiming that Cultist "naturally attracted members who would take advantage of the unmoderated nature of the platform" without mentioning that Cultist's stated goal was anarchy and chaos), and ¶ 59 (claiming, despite all evidence to the contrary that "he has no allegiance or ideology reflective of a domestic terror group" and failing to acknowledge that he not only "encouraged" some members of Cultist to self-harm but coerced them to do so).

The Court should reject any argument by Limkin for a downward variance in light of his history and characteristics (e.g., his age, lack of criminal history, mental condition, and disadvantaged upbringing). PSR ¶¶ 83, 85-90, 95-97. To be sure, some of these factors, particularly his relative youth at the time of the offense and his mental condition, are relevant to the Court's sentencing decision. *See* U.S.S.G. § 5H1.1 ("A downward departure also may be warranted due to the defendant's youthfulness at the time of the offense"); and § 5H1.3 ("Mental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines.").[6] However, the question for the Court is whether those specific offender characteristics outweigh the other sentencing factors such that this defendant deserves leniency. The United States submits they do not. Limkin's crimes are much too serious and far too detrimental to the victims and society writ large to be explained away as the "mistake" of a lonely, depressed, "stupid kid." *See* PSR ¶¶ 56-60. As for Limkin's lack of criminal

[6] Policy statements regarding the somewhat anachronistic departures regime have been moved to Appendix B, Part III of the Guidelines. However, "the removal of departures from the Guidelines Manual does not reflect a determination by the Commission that the rationale underlying the deleted departure provisions is no longer informative or that a court should no longer consider such facts for purposes of determining the appropriate sentence." U.S.S.G. Appx. B, Part III.

history, that factor is already reflected in his criminal history category of I. And as for his upbringing, while undoubtedly difficult, his siblings do not appear to have veered into a life of lawlessness despite growing up under similar circumstances. *See* PSR ¶¶ 84-85, 93. Besides, "[l]ack of guidance as a youth and similar circumstances indicating a disadvantaged upbringing are not relevant grounds in determining whether a departure is warranted." U.S.S.G. § 5H1.12.

## III. The Need for Deterrence

Deterrence, both specific and general, also justifies a 120-month sentence here. *See* § 3553(a)(2)(B). Limkin fails to truly recognize the gravity of his conduct and thus needs to be told and specifically deterred through the Court's sentence. PSR ¶¶ 57-59; 18 U.S.C. § 3553(a)(2)(B). Given his continued storage of child pornography on remote Mega servers as an adult, there is no reason to believe that Limkin would have ceased his NVE mission absent law enforcement's intervention. It also appears that the ordeal of his arrest and prosecution has done little to persuade the defendant to acknowledge his misconduct and make amends. Given his lack of true contrition, there is no reason to believe he would not engage in similar conduct again if offered the opportunity. Matthew Kriner warns that "Limkin presents a strong recidivism risk." ECF No. 84-1 at 18. As he puts it:

> [B]ecause Mr. Limkin developed close interpersonal bonds and attained a sense of personal power over others in this space, Cultists and the NVE ecosystem, represent a significant pull factor, a dynamic or condition which attracts an individual to a group or behavior. In

> summation, there remains a considerable pull factor for a return to his prior activities upon release from prison.

*Id.* at 19. Of further concern is Limkin's "above average technical capacity," which equips him with "the ability to evade and circumvent probationary monitoring of his digital activities" should he wish to return to his criminal ways upon his release. *Id.* Specific deterrence is at issue here.

And Limkin is not the only one to be deterred. General deterrence is perhaps a more pertinent concern under § 3553(a)(2)(B). The NVE network is proliferating. According to Kriner, one of the foremost experts in the field, as many as 139 NVE groups have emerged since 2019. ECF No. 84-1 at 5. An estimated 10,000 individuals have actively engaged in NVE spaces online. *Id.* Other would-be abusers of children should be given no comfort by the sentence the Court imposes in this case. Those who would follow in Limkin's footsteps by terrorizing children with broader aims to destabilize society and accelerate the downfall of the world order must recognize that they will face harsh judgment for such heinous criminal conduct. 18 U.S.C. § 3553(a)(2)(B).

## IV. <u>The Need to Avoid Unwarranted Sentence Disparities</u>

A significant sentence in this case is warranted and would not be out of line with other sentences imposed in child exploitation cases involving similar conduct. One factor a sentencing court is required to consider is "the need to avoid

unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

Elsewhere in the country, federal district courts have imposed significant sentences in child exploitation cases involving similar conduct, reflecting the judiciary's collective acknowledgement of the seriousness of NVE-related child pornography offenses. *See*, *e.g.*, *United States v. Densmore*, 1:24-cr-00007 (W.D. Mich.) (member of 764 sentenced to 30 years for sexual exploitation of a child);[7] and *United States v. Rocker*, 8:24-cr-00496 (M.D. Fla.) (19-year-old member of 764 sentenced to 84 months in prison for possession of child pornography).[8] More recently and closer to home, a judge here in Hawaii likewise has issued a serious sentence in a similar NVE-related child pornography case, reflecting the damage caused to society by this network. *See United States v. Valdez*, 1:25-cr-00112-JAO (D. Haw.) (22-year-old member of "Greggy's Cult" sentenced to 97 months in prison for possession of child pornography).[9]

A significant variance from the Guidelines would create unwarranted sentencing disparities. Indeed, the conduct engaged in by Limkin is significantly

---

[7] https://www.justice.gov/archives/opa/pr/member-violent-764-terror-network-sentenced-30-years-prison-sexually-exploiting-child

[8] https://www.justice.gov/opa/pr/member-764-network-sentenced-possession-child-sexual-abuse-material

[9] https://www.justice.gov/usao-hi/pr/former-navy-petty-officer-sentenced-over-8-years-federal-prison-possession-violent-child

more serious than that exhibited by defendants in the mine run of child pornography possession cases. Limkin not only participated in Discord chat rooms where minors were being abused, he created and moderated his own particular brand of violent nihilistic extremism for fame and glory.

To be sure, no two cases are the same, and the Court must make a particular assessment of each defendant in each case. However, the government's recommended sentence of 120 months imprisonment is in line with the sentences imposed by other courts in NVE-related child exploitation cases and is sufficient but not greater than necessary to achieve the goals of sentencing.

## CONCLUSION

Based upon the considerations set forth above, the United States recommends a sentence of 120 months of imprisonment, which is appropriate and reasonable given the factors set forth in 18 U.S.C. § 3553(a).

DATED: May 7, 2026, at Honolulu, Hawaii.

Respectfully submitted,

KENNETH M. SORENSON
United States Attorney
District of Hawaii

By */s/ Mohammad Khatib*
MOHAMMAD KHATIB
Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served on counsel of record via the Court's CM/ECF system.

DATED: May 7, 2026, at Honolulu, Hawaii.

*/s/ Mohammad Khatib*
Assistant U.S. Attorney