KENNETH M. SORENSON
United States Attorney
District of Hawaii

MOHAMMAD KHATIB
Assistant United States Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
E-mail: Mohammad.Khatib@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 23-00101-HG |
| Plaintiff, | UNITED STATES' RESPONSE IN OPPOSITION TO MOTION TO WITHDRAW GUILTY PLEA; CERTIFICATE OF SERVICE |
| vs. | |
| KALANA LIMKIN, | |
| Defendant. | |

UNITED STATES' RESPONSE IN OPPOSITION TO MOTION TO WITHDRAW GUILTY PLEA

# TABLE OF CONTENTS


**Page**

BACKGROUND .......... 1

I. Procedural History .......... 1

II. Limkin's Guilty Plea .......... 2

LEGAL STANDARD .......... 9

ARGUMENT .......... 12

I. The Alleged Gross Mischaracterization of Limkin's Potential Sentence is an Insufficient Basis to Withdraw His Gulity Plea .......... 12

II. Limkin's Remaining Claims are Contradicted By His Statements at the Change of Plea Hearing and are Otherwise Irrelevant .......... 15

CONCLUSION .......... 19

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Shah v. United States*,
878 F.2d 1156 (9th Cir. 1989) ........ 10, 15

*United States v. Briggs*,
623 F.3d 724 (9th Cir. 2010) ........ 11, 13

*United States v. Davis*,
428 F.3d 802 (9th Cir. 2005) ........ 11, 15

*United States v. Del Valle–Rojas*,
463 F.2d 228 (9th Cir. 1972) ........ 10

*United States v. Dudeck*,
657 F.3d 424 (6th Cir. 2011) ........ 18

*United States v. Ensminger*,
567 F.3d 587 (9th Cir. 2009) ........ 10

*United States v. Garcia*,
909 F.2d 1346 (9th Cir. 1990) ........ 10

*United States v. Garcia*,
401 F.3d 1008 (9th Cir. 2005)........ 11

*United States v. Gordon*,
151 F.4th 1090 (2025)........ 13

*United States v. Jones*,
472 F.3d 1136 (9th Cir. 2007) ........ 10

*United States v. McTiernan*,
546 F.3d 1160 (9th Cir. 2008) ........ 12

*United States v. Nostratis*,
321 F.3d 1206 (9th Cir. 2003)........ 15

*United States v. Oliveros-Orosco*,
942 F.2d 644 (9th Cir. 1991) ........ 15

*United States v. Rios–Ortiz*,
830 F.2d 1067 (9th Cir. 1987) ........ 10

**Cases** **Page(s)**

*United States v. Ross*,
511 F.3d 1233 (9th Cir. 2008) .................................................. 11, 17

*United States v. Signori*,
844 F.2d 635 (9th Cir. 1988) .................................................. 11

*United States v. Trahan*,
111 F.4th 185 (1st Cir. 2024) .................................................. 18

**Statutes and Rules** **Page(s)**

18 U.S.C. § 2252 .................................................. 18

18 U.S.C. § 2252A .................................................. 1, 12, 16, 18

FED. R. CRIM. P. 11 .................................................. 9

In February 2025, Kalana Limkin (hereinafter, "the defendant" or "Limkin") pled guilty to possession of child pornography. Over one year, a new lawyer, and a change of heart later, Limkin has filed a motion to withdraw his plea of guilty mere days before his sentencing hearing. Limkin claims that: (1) former counsel grossly mischaracterized the term of his likely sentence; (2) his plea was not valid because former counsel failed to explore possible defenses, misled him about the nature of the discovery, and pressured him to change his plea; and (3) the Court failed to conduct a Rule 11 colloquy. The Court should deny his motion without a hearing because even accepting all Limkin's unsworn and unsubstantiated statements as true, he fails to establish a "fair and just" reason to withdraw his guilty plea.

## BACKGROUND

### I. Procedural History

Limkin was arrested and a Criminal Complaint was filed charging him with child pornography offenses on December 14, 2023. ECF No. 1. A federal grand jury sitting in the District of Hawaii returned the original Indictment charging Limkin on December 21, 2023. ECF No. 11. The charges were subsequently amended in a Superseding Indictment ("SI") filed on January 16, 2025, charging Limkin with possession of child pornography, in violation of Title 18, United States Code, Sections 2252A(a)(5)(B) and 2252A(b)(2). ECF No. 36. A Second

Superseding Indictment ("SSI") was filed on February 13, 2025, which corrected a clerical error in the SI impacting the forfeiture notice, *see* ECF No. 53, but which otherwise mirrored the charge in the SI. ECF No. 54. Limkin subsequently pleaded guilty to the SSI without a plea agreement. ECF No. 59.

## II. **Limkin's Guilty Plea**

At the change of plea hearing on February 13, 2025, Limkin was represented by predecessor counsel, Gary G. Singh, Esq. Limkin entered, and the Court accepted, his plea of guilty to the charge in the SSI. ECF No. 59. Before the Court accepted his plea, Limkin was sworn to answer the Court's questions truthfully. 11/18/25 Tr. at 3, ECF No. 75. When asked by the Court: "Do you understand that you're now under oath and if you answer any of my questions falsely, your answers could later be used against you in another proceeding for false statement or perjury?" Limkin responded, "Yes, Your Honor." *Id.*

The Court then proceeded with its Rule 11 colloquy. The Court established that Limkin understood the nature of the proceedings that day, questioning him as follows:

> THE COURT: Can you tell me in your own words what you believe is happening here today?
>
> THE DEFENDANT: I believe that I am pleading guilty to the recently received indictment that was given to me.
>
> THE COURT: So it is your intention to plead guilty?
>
> THE DEFENDANT: Yes, Your Honor.

THE COURT: And you're doing this of your own free will?

THE DEFENDANT: Yes, Your Honor.

THE COURT: After consultation with your attorney?

THE DEFENDANT: Yes, Your Honor.

*Id.* at 4-5.

The Court also ensured that Limkin understood the nature of the charge to which he was pleading guilty by having the Assistant United States Attorney read the SSI aloud, and confirming Limkin had read it and discussed it with his attorney. *Id.* at 5-7. When asked whether Limkin had any question about the SSI, Limkin responded, "No, Your Honor." *Id.* at 7.

The Court then questioned Limkin about his rights in relation to the charge:

THE COURT: And you understand that under the Constitution and laws of the United States you are entitled to a trial by a jury on the charges contained in the second superseding indictment?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that at trial you would be presumed to be innocent and the government has the burden of proving you guilty by competent evidence and beyond a reasonable doubt?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that you would not have to prove that you were not guilty because the government has the burden of proving you guilty?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that you have the right to the assistance of an attorney through your defense?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And do you understand that you would have the right to see and hear all of the witnesses and question them, they'd be questioned by an attorney at a trial?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that you could object to evidence offered at the government, and you -- by the government -- and you could offer evidence on your own behalf?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that you would have the right to testify at a trial if there was a trial?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you also understand that you would have the right to choose not to testify?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And do you understand that no inference or suggestion of guilt could be drawn from the fact that you chose not to testify?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that by entering a plea of guilty and if I accept your plea there will be no trial?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that you will have waived or given up your right to a trial as well as the other rights associated with a trial, as I've just described them?

THE DEFENDANT: Yes, Your Honor.

*Id.* at 7-9.

Next, the Court explained the application of the sentencing guidelines to Limkin and confirmed that he had discussed them with counsel and understood the role of the Judge, the PSR, and the general nature of the sentencing process:

> THE COURT: Now, we're going to talk about sentencing guidelines. United States law establishes detailed sentencing guidelines for people convicted of federal crimes. Before I accept your plea of guilty, it's important that you understand certain aspects of the guidelines. Have you and Mr. Singh talked about how the Sentencing Commission guidelines might apply in your case?
>
> THE DEFENDANT: Yes, we have, Your Honor.
>
> THE COURT: Now, you understand that we will not be able to determine the guidelines for your case until after a presentence report has been completed and you and the government and your attorney read it and have an opportunity to object to anything in it; do you understand that?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Do you understand that after it has been determined what guidelines apply to a case the judge has the authority in some circumstances to impose a sentence that is more severe or less severe than the sentence called for in the guidelines?
>
> THE DEFENDANT: Yes, Your Honor. Understand.
>
> THE COURT: You did understand that?
>
> THE DEFENDANT: I do understand, yes.
>
> ***
>
> THE COURT: Do you understand if the sentence is worse or more severe than you expect, you will still be bound by your plea and you will not have a right to withdraw it?
>
> THE DEFENDANT: Yes, Your Honor.

*Id.* at 10- 12. The Assistant United States Attorney then informed the defendant that he faced as much as 10 years in prison for the charge in the SSI. *Id.* at 12. When asked by the Court whether he had any questions about the possible sentence to prison that he may receive, Limkin responded, "No, Your Honor." *Id.* at 14.

Later, Limkin confirmed his understanding that any predictions that anyone, including his attorney, had made about his ultimate sentence were not binding on the Court:

> THE COURT: Do you understand that the predictions or prophecies that your attorney may have made to you or anyone else -- has anyone else made any predictions or prophecy to you as to what your sentence may be?
>
> THE DEFENDANT: No, only my attorney, Your Honor.
>
> THE COURT: Okay. Well, anyone else or your attorney are giving you their opinion. Your attorney, of course, is an experienced defense attorney. However, what you must understand, that the sentence is up to the judge. And the result here will be a sentence imposed by a judge. Do you understand that?
>
> THE DEFENDANT: Yes, Your Honor.

*Id.* Limkin also confirmed that no one had threatened or forced him into pleading guilty, and that he was pleading guilty of his own free will. *Id.* at 15.

The United States described the elements of the offense to which Limkin was pleading guilty and outlined the evidence the United States intended to offer if the case were to proceed to trial. *Id.* at 16-18. The Court then instructed Limkin to explain, in his own words, the conduct that made him guilty of the charge in the SSI, and then followed up by canvassing the defendant on specific elements:

> THE DEFENDANT: Your Honor, I was in possession of a hard drive, and on that hard drive there was a depiction of an image of a minor, child pornography.
>
> THE COURT: I'm sorry. I didn't hear the last part.

THE DEFENDANT: There was an image of a depiction of a minor, of child pornography.

THE COURT: I didn’t understand the last thing you said.

THE DEFENDANT: Child pornography.

THE COURT: Okay. So what computer was this?

THE DEFENDANT: It was a hard drive in my possession, a Seagate 1500-gigabyte hard drive.

THE COURT: That was yours?

THE DEFENDANT: Yes, Your Honor.

THE COURT: How did this image come to be on your computer?

THE DEFENDANT: I cannot recall, Your Honor. But when I was 16 there was a video recording, and the image was uploaded and the depiction was in that video recording.

THE COURT: Are you saying you didn’t do it?

THE DEFENDANT: No, Your Honor.

THE COURT: Well, so what exactly are you saying?

THE DEFENDANT: I am saying I possessed the image knowingly on the Seagate hard drive.

THE COURT: Well, I’m asking you how it got there.

THE DEFENDANT: It was an image on a server on Discord. The image was readily accessible to me, and by uploading that image and recording it, it was then in my possession.

THE COURT: So it was your computer?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You knew where it was?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Are you the person who uploaded it?

THE DEFENDANT: Yes. Yeah.

THE COURT: Okay. And that was back in September of ’23? Or earlier?

THE DEFENDANT: Earlier. The file -- the video file that was created was in 2022.

THE COURT: And did you look at this image?

THE DEFENDANT: When, Your Honor?

THE COURT: Anytime.

THE DEFENDANT: When it -- the file was created, yes.

THE COURT: And then was it available on your computer on December 12th, 2023?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Did you possess that computer?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. So, now, tell me what the image was.

THE DEFENDANT: The image was of a minor in a lavicious [verbatim] manner.

THE COURT: Boy or girl?

THE DEFENDANT: Female, I believe, Your Honor.

THE COURT: And about what age?

THE DEFENDANT: I cannot determine the age, Your

Honor.

THE COURT: Okay. Older than 12?

THE DEFENDANT: I believe so, yes, Your Honor.

THE COURT: Okay. And what -- tell me one of the images that you consider to be – what’s your own term?

THE DEFENDANT: Lavicious.

THE COURT: Okay. So tell me something that was lavicious [verbatim] in that image that you looked at.

> THE DEFENDANT: The image was of a minor's genitalia area, Your Honor.
>
> THE COURT: Was there some action or something happening with that?
>
> THE DEFENDANT: I don't believe so, Your Honor.
>
> THE COURT: It was just an image of genitalia of a young female woman?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: How long did this video last?
>
> THE DEFENDANT: The video was I believe one hour and 33 minutes.
>
> THE COURT: I assume there was some movement and things were happening in this movie?
>
> THE DEFENDANT: The video is of a recording of a group chat. The image itself was uploaded into the group chat and it was on the screen for, I'd like to say, less than five seconds. I'm not sure. It was very quick. The entire video isn't of child pornography, Your Honor.
>
> THE COURT: But this was an inappropriate image that had a nature of sexual content of this minor?
>
> THE DEFENDANT: I believe so, yes, Your Honor. Yes.

*Id.* at 18-22.

Following that colloquy, the Court asked Limkin whether he was guilty or not guilty of the charge in the SSI. Limkin responded, "Guilty, Your Honor." *Id.* at 22.

## **LEGAL STANDARD**

A defendant seeking to withdraw his guilty plea prior to sentencing bears the burden of establishing that a "fair and just reason" exists for the withdrawal. FED. R. CRIM. P. 11(d)(2)(B). This standard "is generous and must be applied liberally."

*United States v. Ensminger*, 567 F.3d 587, 590 (9th Cir. 2009). "While withdrawal of a guilty plea should be freely allowed prior to sentencing, there is no absolute right to change a plea. Rather, the decision is committed to the sound discretion of the district court." *United States v. Del Valle–Rojas*, 463 F.2d 228, 229 (9th Cir. 1972) (citation modified).

The Ninth Circuit has previously held that fair and just reasons include "inadequate Rule 11 plea colloquies, newly discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that did not exist when the defendant entered his plea." *Ensminger*, 567 F.3d at 590 (quoting *United States v. Jones*, 472 F.3d 1136, 1141 (9th Cir. 2007)) (citation modified). However, a mere change of heart about the decision to plead guilty is not a fair and just reason. *United States v. Rios–Ortiz*, 830 F.2d 1067, 1069 (9th Cir. 1987).

Likewise, a defendant may not generally change his plea solely because his attorney underestimated the severity of the sentence he faced. *See, e.g.*, *United States v. Garcia*, 909 F.2d 1346, 1348 (9th Cir. 1990); (an "erroneous prediction by a defense attorney concerning sentencing does not entitle a defendant to challenge his guilty plea."); *Shah v. United States*, 878 F.2d 1156, 1162 (9th Cir. 1989) ("Nor do we believe that fear of receiving a harsh sentence, standing alone, constitutes a 'fair and just' reason to withdraw a plea, even if counsel's initial advice as to length of plea turned out to be inaccurate."). Only in exceptional

circumstances such as where defendant's counsel "grossly mischaracterized" the defendant's possible sentence will a defendant be allowed to change his plea for such a reason. *United States v. Briggs*, 623 F.3d 724, 728-29 (9th Cir. 2010). Only defense counsel's "proven misrepresentations" to the defendant of his likely sentencing range will support withdrawal of a guilty plea. *See United States v. Davis*, 428 F.3d 802, 807 (9th Cir. 2005) (citing *United States v. Signori*, 844 F.2d 635, 638 (9th Cir. 1988).

In *United States v. Davis*, the Ninth Circuit held that the district court abused its discretion by denying the defendant's motion to withdraw his guilty plea where defendant's counsel "grossly mischaracterized" the defendant's possible sentence by telling him he was likely to get probation, rather than the eight-years' imprisonment the government was seeking. 428 F.3d at 805-08. There, the Ninth Circuit noted there was "little, if any, possibility" of defendant receiving a sentence of probation because the court would have had to "depart 20 to 30 levels" to get there. *Id.* at 806-07.

Statements made during the plea hearing are entitled to a strong presumption of veracity in later attacks on the plea, *United States v. Ross*, 511 F.3d 1233, 1236-37 (9th Cir. 2008) (citation modified), and a court may also consider the time elapsed between the entering of such a plea and the defendant's withdrawal request, *United States v. Garcia*, 401 F.3d 1008, 1013 (9th Cir. 2005) (citation

modified). Ultimately, however, each case must be reviewed in the context in which the motion to withdraw guilty plea arose to determine whether a fair and just reason exists to permit withdrawal. *United States v. McTiernan*, 546 F.3d 1160, 1167 (9th Cir. 2008).

## ARGUMENT

Because former counsel did not "grossly mischaracterize" Limkin's sentencing exposure, and because Limkin's plea was otherwise valid, as explained below, Limkin offers no fair and just reason for withdrawing his plea. Accordingly, his motion should be denied.

### I. The Alleged Gross Mischaracterization of Limkin's Potential Sentence is an Insufficient Basis to Withdraw His Gulity Plea

Even if the Court were to credit all Limkin's unsworn assertions regarding his former counsel's sentencing advice, Limkin has not met his burden of showing that his counsel's estimate was a gross mischaracterization of his likely sentence. Here, the Guidelines sentence, and the maximum sentence the Court can impose, is 120 months. ECF No. 85 ¶¶ 104-05; 18 U.S.C. § 2252A(b)(2). Limkin claims that Attorney Singh advised him, "I would be surprised if you were sentenced to more than 5 years." ECF No. 88 at 4-5. Limkin admits that Singh's purported statement was no guarantee. *Id.* at 5.

Thus, at most, the difference between former counsel's alleged representation and Limkin's maximum sentence is 5 years, or sixty months. That

is insufficient to establish a "gross mischaracterization of his sentencing exposure. A sixty-month discrepancy is not a "gross mischaracterization of the likely outcome" of Limkin's case under Ninth Circuit caselaw. *See United States v. Gordon*, 151 F.4th 1090, 1098 (2025) (finding no error in district court's denial of motion to withdraw guilty plea without conducting an evidentiary hearing because counsel's alleged sentencing prediction was, at most, 60 months less than the actual sentence and thus was not a gross mischaracterization); *Briggs*, 623 F.3d at 729 (finding 124-month discrepancy between the 200-month sentence the defendant expected and the 324-month sentence he received was not a "fair and just" reason for withdrawal of guilty plea because defendant was "aware that he faced a substantial term of incarceration" and failed to substantiate his allegations of inadequate legal advice).

Aside from his failure to meet the "gross mischaracterization" standard, Limkin fails to acknowledge the non-binding nature of the presentence investigation report ("PSR") and the Court's role at sentencing. At the plea colloquy, the Court discussed the applicability of the sentencing Guidelines and Limkin confirmed his understanding that "we will not be able to determine the guidelines for your case until after a presentence report has been completed and you and the government and your attorney read it and have an opportunity to object to anything in it." 11/18/25 Tr. at 10-11, ECF No. 75. Limkin further

acknowledged under oath that the Court alone would determine his sentence and that any sentence imposed may be different from the estimate provided by Attorney Singh "or anyone else." 11/18/25 Tr. at 14, ECF No. 75. The Court ensured Limkin understood the statutory maximum prison sentence that could apply and Limkin confirmed that he had no questions about that possible penalty. *Id.* at 12, 14. Thus, the Court's Rule 11 colloquy necessarily resolved any doubts that Limkin harbored regarding his sentencing exposure in this case. *See Briggs*, 623 F.3d at 728 ("We take the district court's detailed colloquy with [defendant] as strong evidence that [defendant] understood the meaning of his actions.").

The Court has not yet determined whether the inclusion of certain relevant conduct to calculate Limkin's total offense level and the resulting Guideline range set forth in the PSR will apply in this case. As the Court explained to defendant at his change of plea hearing, the Court—not anyone else—will preside over Limkin's sentencing. The Court will ultimately decide what constitutes relevant conduct and what enhancements apply.

Former counsel did not grossly mischaracterize Limkin's sentencing range. In fact, his present counsel is advocating for the application of an even lower Guidelines range and the same sentence as Singh allegedly predicted. *See* ECF No. 87 at 6, 11 (arguing that the Guidelines range should be 18 to 24 months and requesting a 60-month sentence). While it is premature to determine what

Limkin's sentence will ultimately be, Singh's alleged prediction is not a near impossibility, as was the case in *Davis*. 428 F.3d at 806-07. Singh's alleged and unguaranteed "prediction cannot be proved correct or incorrect until the future event has occurred." *United States v. Oliveros-Orosco*, 942 F.2d 644, 646 (9th Cir. 1991). Regardless, the record does not support the conclusion that Limkin was misinformed as to his possible sentencing exposure. To the contrary, given the timing of Limkin's motion, it appears that Limkin "only wanted to change his plea once he was face-to-face with the full consequences of his conduct." *Briggs*, 623 F.3d at 729; *see also United States v. Nostratis*, 321 F.3d 1206, 1211 (9th Cir. 2003) ("Defendants cannot plead guilty to 'test the weight of potential punishment' and then withdraw their plea if the sentence is 'unexpectedly severe.'") (citation modified); *Shah*, 878 F.2d at 1162 (9th Cir. 1989) ("Nor do we believe that fear of receiving a harsh sentence, standing alone, constitutes a 'fair and just' reason to withdraw a plea, even if counsel's initial advice as to length of plea turned out to be inaccurate."). Under these circumstances, Limkin's sentencing expectations do not constitute a "fair and just reason" for withdrawal.

## II. Limkin's Remaining Claims are Contradicted By His Statements at the Change of Plea Hearing and are Otherwise Irrelevant

Limkin claims he: (i) did not have an opportunity to retain a forensic expert to explore possible defenses prior to entering his guilty plea, (ii) was pressured into entering his guilty plea, and (iii) was misled as to the nature of the discovery.

None of these unsubstantiated excuses support a finding that Limkin should be allowed to withdraw his guilty plea because each is directly contradicted by what transpired at his change of plea hearing and is otherwise not a fair a just reason.

The central argument advanced by Limkin is that he ought to be allowed to withdraw his guilty plea because he was unable retain an expert prior to entering his guilty plea. As he frames it, the computer expert he has retained since then, Josiah Roloff, would have opined that there is insufficient evidence that Limkin accessed child pornography on the date alleged in the SSI, thus providing a defense to the charge. *See* ECF No. 88 at 5-6. That argument fails entirely.

Limkin is charged in the SSI with *possessing* child pornography on December 13, 2023, in violation of 18 U.S.C. § 2252A(a)(5)(B). ECF No. 54. He is not charged with *accessing* child pornography with intent to view it. *Id.* Accordingly, any questions regarding whether Limkin accessed the image on the date alleged in SSI are irrelevant.

Furthermore, Limkin's statements under oath in open court at his change of plea hearing directly contradict his argument. The Court engaged in a thorough and searching inquiry with Limkin. The Court advised Limkin of each consideration enumerated in Federal Rule of Criminal Procedure 11(b)(1). *See generally* 11/18/25 Tr., ECF No. 75. In addition to advising Limkin concerning the waiver of rights attendant to entering his plea of guilty, the Court specifically

advised him of the permanence of the consequences of changing his plea. *Id.* at 7-9, 12. And before accepting Limkin's guilty plea, the Court determined there was an adequate factual basis for the plea as required by Rule 11(b)(3). He admitted that he knowingly possessed child pornography on the date alleged. He told the Court, "Your Honor, I was in possession of a hard drive, and on that hard drive there was a depiction of an image of a minor, child pornography." 11/18/25 Tr. at 19, ECF No. 75. When the Court asked Limkin to clarify whether he was admitting to the offense, he responded, "I am saying I possessed the image knowingly on the Seagate hard drive." *Id.* at 19. When the Court asked whether the image of child pornography was "available on your computer on December 12th, [sic] 2023?" Limkin responded, "Yes, Your Honor." *Id.* at 20. When the Court asked Limkin to describe the image, he responded that it "was of a minor's genitalia area." *Id.* at 21. And when the Court inquired whether it "was an inappropriate image that had a nature of sexual content of this minor?" Limkin confirmed, "I believe so, yes, Your Honor. Yes." *Id.* at 22. There is no fair or just reason to allow Limkin to revisit the statements made at the change of plea hearing.[1] *See Ross*, 511 F.3d at 1236–37 (statements made during the plea hearing are entitled to a strong presumption of veracity in later attacks on the plea).

---

[1] Similarly, there is no merit to Limkin's argument that the Court failed to conduct an adequate plea colloquy and therefore lacks jurisdiction over the offense. *See* ECF No. 88 at 7-8.

Limkin further claims that he was misled about the minor depicted because her identity could not be determined. ECF No. 88 at 8-9. However, the minor's name is irrelevant. As stated in the PSR, investigators were able to determine that the victim is Ukrainian and a minor. ECF No. 85 ¶ 53. That is more than sufficient to satisfy the elements of 18 U.S.C. § 2252A(a)(5)(B). *See, e.g.*, *United States v. Trahan*, 111 F.4th 185, 195 (1st Cir. 2024) ("the difference between § 2252 and § 2252A is that the former statute is directed only to depictions of actual minors while the latter includes minors but extends also to those who only appear to be minors or are fictitious creations but appear real.") (citation modified); *United States v. Dudeck*, 657 F.3d 424, 431 (6th Cir. 2011) ("Whereas a § 2252(a)(2) violation arises only where the child pornography at issue involves real minors engaged in sexually explicit conduct, a § 2252A(a)(2) violation arises where the child pornography involves real minors or "virtual" minors—such as digitally created or altered minors—engaged in sexually explicit conduct."). Besides, as previously mentioned, Limkin admitted during his plea colloquy that the charged image depicted a minor and constituted child pornography.

Another argument advanced by Limkin is that a fair, just reason to grant leave to withdraw his plea exists because he "felt pressure" to enter his guilty plea. ECF No. 88 at 6-7. However, at the change of plea hearing, the Court directly asked and Limkin confirmed that no one had threatened or forced him into

pleading guilty, and that he was pleading guilty of his own free will. 11/18/25 Tr. at 4-5, 15, ECF No. 75. Limkin not entitled to change his answer now simply because he fears the consequences of his conduct.

## CONCLUSION

For the foregoing reasons, the Court should deny the defendant's motion to withdraw his guilty plea without a hearing.

DATED: May 11, 2026, at Honolulu, Hawaii.

Respectfully submitted,

KENNETH M. SORENSON
United States Attorney
District of Hawaii

By *[/s/ Mohammad Khatib]*
MOHAMMAD KHATIB
Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served on counsel of record via the Court's CM/ECF system.

DATED: May 11, 2026, at Honolulu, Hawaii.

*/s/ Mohammad Khatib*
Assistant U.S. Attorney