IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>KALANA LIMKIN,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CRIM. NO. 23-00101 HG-01 |

**ORDER DENYING DEFENDANT KALANA LIMKIN'S MOTION TO WITHDRAW GUILTY PLEA (ECF No. 88)**

Defendant Kalana Limkin has filed a Motion to Withdraw Guilty Plea.

On February 13, 2025, Defendant Kalana Limkin pled guilty to one count of Possession of Child Pornography, the only count in the Second Superseding Indictment. Defendant was charged as follows:

> On or about December 13, 2023, within the District of Hawaii, KALANA LIMKIN, the defendant, did knowingly possess material, namely a Seagate 1500 gigabyte hard drive, that contained an image of child pornography as defined in Title 18, United States Code, Section 2256(8), such image having been shipped and transported using any means and facility of interstate and foreign commerce, and which was produced using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce, by any means, including by computer.
>
> In violation fo Title 18, United States Code, Sections 2252A(a)(5)(B) and 2252A(b)(2).
>
> (Second Superseding Indictment, ECF No. 54)

Defendant was represented by court-appointed Attorney Gary Singh at the time of his guilty plea.

Following the guilty plea, Attorney Singh filed a Motion to Withdraw as Counsel, which was granted. Attorney William Bagasol was then appointed to represent Defendant.

On May 8, 2026, four days before the scheduled sentencing hearing, Defendant Limkin filed a Motion to Withdraw Guilty Plea. Defendant argues that he should be permitted to withdraw his guilty plea because he claims that he received ineffective assistance of counsel from Attorney Singh. Defendant also argues that he was pressured to plead guilty and that the Court's plea colloquy was insufficient.

Defendant's Motion to Withdraw Guilty Plea (ECF No. 88) is **DENIED.**

Defendant did not receive ineffective assistance of counsel. Defendant knowingly and voluntarily pled guilty to the one count in the Second Superseding Indictment. The plea colloquy was thorough and complete. There is no fair and just reason for Defendant to withdraw his guilty plea.

## PROCEDURAL HISTORY

On December 14, 2023, the Government filed a Criminal Complaint against Defendant Kalana Limkin and he was arrested. (ECF Nos. 1, 2).

On December 18, 2023, Defendant made his initial appearance. Attorney Max Mizono of the Federal Public Defender's Office was appointed as counsel. (ECF No. 8).

On December 19, 2023, Attorney Melinda Yamaga of the Federal

Public Defender's Officer was substituted as counsel for Attorney Mizono. (ECF No. 10).

On December 21, 2023, the grand jury returned a one-count Indictment, charging Defendant Kalana Limkin with one count of Possession of Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). (ECF No. 11).

On December 26, 2023, Defendant was ordered detained pending trial. (ECF No. 17).

On December 27, 2023, Defendant pled not guilty to the one count in the Indictment. (ECF No. 19).

On January 12, 2024, the Court granted the Parties' First Stipulation Continuing Trial Date and Excluding Time Under the Speedy Trial Act. (ECF No. 20).

On February 14, 2024, the Court granted the Parties' Second Stipulation and Order Continuing Trial Date and Excluding Time Under the Speedy Trial Act. (ECF No. 22).

On August 2, 2024, Defendant filed a Motion to Reopen Detention Hearing. (ECF No. 23).

On August 30, 2024, the Court held a Hearing on Defendant's Motion to Reopen Detention Hearing and denied the Motion. (ECF No. 26).

On October 2, 2024, the Court granted the Parties' Third Stipulation Continuing Trial Date and Excluding Time Under the Speedy Trial Act. (ECF No. 27).

On November 4, 2024, Attorney Yamaga filed a Motion to Withdraw as Attorney. (ECF No. 29).

On November 13, 2024, the Court held a hearing on Attorney Yamaga's Motion and granted her request for withdrawal and substitution of counsel. (ECF No. 31).

Following the hearing on November 13, 2024, Attorney Gary Singh was appointed as counsel for Defendant. (ECF No. 32).

On November 18, 2024, Defendant filed a Motion to Continue Trial. (ECF No. 33).

On December 10, 2024, the Court held a hearing and granted Defendant's Motion. (ECF No. 35).

On January 16, 2025, the grand jury returned a First Superseding Indictment, charging Defendant with one count of Possession of Child Pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2). (ECF No. 36).

Also on January 16, 2025, the Court granted the Parties' Stipulation to Extend the Deadlines for the Parties' Rule 16 Expert Disclosures. (ECF No. 40).

On January 17, 2025, Defendant was arraigned and pled not guilty to the one count in the First Superseding Indictment. (ECF No. 41).

On February 5, 2025, Defendant filed a Motion for Pretrial Release. (ECF No. 47).

On February 10, 2025, Defendant filed a Motion to Continue Trial Date. (ECF No. 51).

On February 12, 2025, the Court held a hearing. (ECF No. 53). At the hearing, Assistant United States Attorney Mohammad Khatib stated that there was an error in the First Superseding

Indictment because it contained duplicative forfeiture allegations. AUSA Khatib stated that the United States would seek a Second Superseding Indictment to make the correction. The Court set a further hearing on the Motion to Continue pending the Second Superseding Indictment. The Court denied Defendant's Motion for Pretrial Release.

The following day, on February 13, 2025, the grand jury returned the Second Superseding Indictment. (ECF No. 54). The Second Superseding Indictment corrected the forfeiture allegation by deleting the duplicate language. The charge in the Second Superseding Indictment is identical to the charge in the First Superseding Indictment. The Second Superseding Indictment charged Defendant with one count of Possession of Child Pornography, as follows:

> On or about December 13, 2023, within the District of Hawaii, KALANA LIMKIN, the defendant, did knowingly possess material, namely a Seagate 1500 gigabyte hard drive, that contained an image of child pornography as defined in Title 18, United States Code, Section 2256(8), such image having been shipped and transported using any means and facility of interstate and foreign commerce, and which was produced using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce, by any means, including by computer.
>
> In violation fo Title 18, United States Code, Sections 2252A(a)(5)(B) and 2252A(b)(2).

(Id.)

Also on February 13, 2025, Defendant pled guilty to the one count in the Second Superseding Indictment. (ECF No. 59). Defendant was sworn and questioned by the Court. (Transcript of

Guilty Plea, ECF No. 75). AUSA Khatib read the charge in the Second Superseding Indictment. (Id.) Attorney Singh stated that the Second Superseding Indictment was received and that he reviewed it with Defendant. (Id.) Defendant testified that he understood the charge. (Id.)

The Court informed Defendant about sentencing procedures including the Presentence Report's calculation of the sentencing guidelines and the Court's ability to depart from the sentencing guidelines, and Defendant's appellate rights. (Id.) AUSA Khatib summarized the essential elements of the offense, the factual basis for the offense, and the maximum statutory penalties. (Id.)

Defendant's counsel and Defendant concurred with the recitation by AUSA Khatib. (Id.) Defendant was advised of and waived his constitutional rights to proceed to trial. (Id.) The Court conducted a thorough colloquy and Defendant admitted to the factual basis to support his guilty plea. (Id.) A plea of guilty as to Count 1 of the Second Superseding Indictment was entered by the Defendant Kalana Limkin. (Id.) The Court accepted the guilty plea, and the defendant was adjudged guilty. Sentencing was set for May 29, 2025. (Minutes from Guilty Plea, ECF No. 59).

On April 24, 2025, at the Defendant's request, the Court continued Defendant's sentencing until September 8, 2025. (ECF No. 63).

On August 11, 2025, Attorney Singh filed a Motion to

Withdraw as Attorney. (ECF No. 65).

On August 18, 2025, the Magistrate Judge granted Attorney Singh's Motion to Withdraw as Attorney and appointed Attorney William Bagasol as Defendant's counsel. (ECF No. 68).

On August 20, 2025, sentencing was continued to November 24, 2025. (ECF No. 70).

On September 3, 2025, sentencing was continued to December 18, 2025. (ECF No. 71).

On November 6, 2025, sentencing was continued to January 12, 2026. (ECF No. 74).

On December 15, 2025, Defendant, through Attorney Bagasol, filed a Motion to Continue Sentencing. (ECF No. 76).

On January 5, 2026, the Court held a hearing and granted Defendant's Motion to Continue Sentencing. (ECF No. 78). Sentencing was continued from January 12, 2026 to March 4, 2026. (Id.)

On February 4, 2026, Defendant filed a Motion for Extension of Time to File Sentencing Statement. (ECF No. 79).

On February 18, 2026, the Court held a hearing and granted Defendant's Motion for Extension of Time to File Sentencing Statement. (ECF No. 82). Sentencing was continued from May 4, 2026 to May 12, 2026. (Id.)

On April 13, 2026, the Probation Officer filed the Presentence Investigation Report. (ECF No. 85).

On May 8, 2026, Defendant Limkin filed a Motion to Withdraw Guilty Plea. (ECF No. 88).

On May 11, 2026, the Government filed its Opposition to Defendant's Motion to Withdraw Guilty Plea. (ECF No. 89).

On May 12, 2026, the Court held a hearing on Defendant's Motion to Withdraw Guilty Plea. (ECF No. 90).

## STANDARD OF REVIEW

Federal Rule of Criminal Procedure 11(d)(2)(B) provides that a defendant may withdraw from a plea of guilty before sentencing if the defendant can show a fair and just reason for requesting the withdrawal. See United States v. Nostratis, 321 F.3d 1206, 1208 (9th Cir. 2003).

The standard is to be applied liberally but the burden is on the defendant to demonstrate a fair and just reason to withdraw from a guilty plea. United States v. Davis, 428 F.3d 802, 805 (9th Cir. 2005).

Fair and just reasons for withdrawal from a guilty plea include inadequate Rule 11 plea colloquies, newly discovered evidence, intervening circumstances, or previously unavailable material information that did not exist when the defendant entered his plea. United States v. Ortega-Ascanio, 376 F.3d 879, 883 (9th Cir. 2004); see United States v. Hernandez, 105 F.4th 1234, 1239 (9th Cir. 2024) (explaining that the defendant must offer a good faith "new" basis for seeking to withdraw his plea and requiring that the information be material and information which objectively could not have been known at the time of the plea).

A defense counsel's erroneous advice may provide a basis for the court to allow a defendant to withdraw a guilty plea if the defendant establishes that the attorney provided advice that was a gross mischaracterization of the case that plausibly could have motivated the defendant's decision to plead guilty. Davis, 428 F.3d at 805.

A change of heart is not a fair and just reason that entitles a defendant to withdraw a guilty plea. United States v. Ensminger, 567 F.3d 587, 593 (9th Cir. 2009). Once a guilty plea is accepted by the Court, a withdrawal of that plea is the exception and not an automatic right. Id.

Each case must be reviewed in the context in which the motion to withdraw the guilty plea arose to determine if a fair and just reason exists to permit withdrawal. United States v. McTiernan, 546 F.3d 1160, 1167 (9th Cir. 2008).

The decision to allow withdrawal of a guilty plea is solely within the discretion of the district court. United States v. Peterson, 995 F.3d 1061, 1065 (9th Cir. 2021).

## ANALYSIS

### I. Defendant's February 13, 2025 Guilty Plea Was Knowing And Voluntary

A plea must be knowing and voluntary, which requires that the defendant possess an understanding of the law in relation to the facts. McCarthy v. United States, 394 U.S. 459, 466 (1969). A plea is valid if it "represents a voluntary and intelligent

choice among the alternative courses of action open to the defendant." United States v. Harpham, 564 Fed. Appx. 907, 908 (9th Cir. 2014) (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)).

**A. Defendant Was Sworn To Testify Truthfully Under Oath At His Guilty Plea**

Statements made by the defendant during the guilty plea hearing carry a strong presumption of veracity in subsequent proceedings attempting to attack the guilty plea. United States v. Ross, 511 F.3d 1233, 1236 (9th Cir. 2008).

Defendant Limkin was sworn to answer questions truthfully under oath at the February 13, 2025 change of plea hearing. (Transcript of Guilty Plea at p. 3, ECF No. 75).

The Court asked Defendant Limkin: "Do you understand that you're now under oath and if you answer any of my questions falsely, your answers could later be used against you in another proceeding for false statement or perjury?" (Id.) Defendant Limkin responded, "Yes, Your Honor." (Id.)

**B. The Court Conducted A Thorough Rule 11 Colloquy At Guilty Plea**

Federal Rule of Criminal Procedure 11 requires judges to determine that a plea has a factual basis. Fed. R. Crim. P. 11(b)(3). To satisfy this requirement, the judge conducts a colloquy to determine that the conduct which the defendant admits to satisfies the offense charged in the indictment. McCarthy,

394 U.S. at 467.

On February 13, 2025, the Court inquired with Defendant Limkin to ensure that he was making a valid, knowing, and voluntary guilty plea. (Transcript of Guilty Plea at pp. 2-5, ECF No. 75). The Court asked Defendant about his education, work history, and substance use history. (Id.) Defendant's responses demonstrated that Defendant understood the nature of the proceedings and was making a valid, knowing, and voluntary guilty plea.

### 1. Defendant Understood The Nature Of The Guilty Plea Proceedings And the Charge In The Second Superseding Indictment

The Court asked Defendant numerous questions to verify that he understood the proceedings and that he was voluntarily electing to plead guilty to the one count in the Second Superseding Indictment. The Court inquired as follows:

THE COURT: Can you tell me in your own words what you believe is happening here today?

DEFENDANT: I believe that I am pleading guilty to the recently received indictment that was given to me.

THE COURT: So it is your intention to plead guilty?

DEFENDANT: Yes, Your Honor.

THE COURT: And you're doing this of your own free will?

DEFENDANT: Yes, Your Honor.

THE COURT: After consultation with your attorney?

DEFENDANT: Yes, Your Honor.

THE COURT: The Court finds that the defendant is competent to understand the proceedings and to enter a knowing plea.

(Id. at pp. 4-5).

The Court ensured that Defendant understood the nature of the charge to which he was pleading guilty. The Court had the Assistant United States Attorney ("AUSA") read the only charge in the Second Superseding Indictment. (Id. at pp. 5-7). The Court confirmed with Defendant that he had read the charge and discussed it with Attorney Singh. (Id.) The Court asked Defendant if he had any questions about the Second Superseding Indictment and Defendant replied, "No, Your Honor." (Id. at p. 7).

### 2. Defendant Understood His Right To Proceed To Trial And Knowingly And Voluntarily Waived That Right

The Court made sure that the Defendant understood his Constitutional rights and understood his options to proceed to trial, as follows:

THE COURT: And you understand that under the Constitution and laws of the United States you are entitled to a trial by a jury on the charges contained in the Second Superseding Indictment?

DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that at trial you would be presumed to be innocent and the government has the burden of proving you guilty by competent evidence and beyond a reasonable doubt?

DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that you would not have to prove that you were not guilty because the government has the burden of proving you guilty?

DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that you have the right to the assistance of an attorney through your defense?

DEFENDANT: Yes, Your Honor.

THE COURT: And do you understand that you would have the right to see and hear all of the witnesses and question them, they'd be questioned by an attorney at a trial?

DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that you could object to evidence offered at the government, and you -- by the government -- and you could offer evidence on your own behalf?

DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that you would have the right to testify at a trial if there was a trial?

DEFENDANT: Yes, Your Honor.

THE COURT: Do you also understand that you would have the right to choose not to testify?

DEFENDANT: Yes, Your Honor.

THE COURT: And do you understand that no inference or suggestion of guilt could be drawn from the fact that you chose not to testify?

DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that by entering a plea of guilty and if I accept your plea there will be no trial?

DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that you will have waived or given up your right to a trial as well as the other rights associated with a trial, as I've just described them?

DEFENDANT: Yes, Your Honor.

(Transcript of Guilty Plea at pp. 7-9, ECF No. 75).

### 3. Defendant Understood The Procedures To Be Used In Sentencing And That He Could Not Withdraw His Guilty Plea If The Sentence Was Higher Than Expected

The Court explained the procedures for sentencing, including the drafting of a Presentence Investigation Report and the calculation of the sentencing guidelines. (Id. at pp. 10-12). The Court confirmed that Defendant Limkin had discussed the sentencing procedures and potential sentencing guidelines with Attorney Singh. (Id.) The transcript provides, as follows:

THE COURT: Now, we're going to talk about sentencing guidelines. United States law establishes detailed sentencing guidelines for people convicted of federal crimes. Before I accept your plea of guilty, it's important that you understand certain aspects of the guidelines. Have you and Mr. Singh talked about how the Sentencing Commission guidelines might apply in your case?

DEFENDANT: Yes, we have, Your Honor.

THE COURT: Now, you understand that we will not be able to determine the guidelines for your case until after a presentence report has been completed and you and the government and your attorney read it and have an opportunity to object to anything in it; do you understand that?

DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that after it has been determined what guidelines apply to a case the judge has the authority in some circumstances to impose a sentence that is more severe or less severe than the sentence called for in the guidelines?

DEFENDANT: Yes, Your Honor. Understand.

THE COURT: You did understand that?

DEFENDANT: I do understand, yes.

THE COURT: You do understand that under the circumstances the government or you may have a right to appeal a sentence that I impose?

DEFENDANT: Yes, Your Honor.

THE COURT: Do you also understand that parole has been abolished in the federal system and that if you are sentenced to prison, you will not be released early on parole?

DEFENDANT: Yes, Your Honor.

**THE COURT: Do you understand if the sentence is worse or more severe than you expect, you will still be bound by your plea and you will not have a right to withdraw it?**

**DEFENDANT: Yes, Your Honor.**

THE COURT: The Court finds that the defendant understands the requirements of the sentencing guidelines and the plea of guilty is being made in accordance with that understanding.

Do you still wish to plead guilty?

DEFENDANT: Yes, Your Honor.

(Transcript of Guilty Plea at pp. 10-12, ECF No. 75) (emphasis added).

### 4. Defendant Understood The Maximum Possible Penalties For Pleading Guilty To The One Count In The Second Superseding Indictment

The Court confirmed that Defendant Limkin discussed the Second Superseding Indictment with Attorney Singh and that Defendant did not have any questions about it. (Transcript of Guilty Plea at p. 12, ECF No. 75). The Court had the Government explain the charge and the maximum possible penalties, which included as much as 10 years of incarceration. (Id.) The colloquy was conducted as follows:

THE COURT: Have you received a copy of the indictment that has just been read to you?

DEFENDANT: Yes, Your Honor.

THE COURT: And you have discussed it with Mr. Singh?

DEFENDANT: Yes, Your Honor.

THE COURT: Do you have any questions at this time about it?

DEFENDANT: No, Your Honor.

THE COURT: At this time I'm going to ask Mr. Khatib to talk about the penalties for the charge in the second superseding indictment. You may be seated while he does that.

AUSA KHATIB: Thank you, Your Honor. The penalties for the charge that the defendant's been -- contained in the second superseding indictment are as follows: A term of imprisonment of up to ten years, a fine of up to $250,000, plus a term of supervised release of up to three years, and the Court must also impose a 100-dollar special assessment, which is mandatory.

For any non-indigent person, there is also an assessment of $5,000, under Title 18 United States Code section 3014, for the domestic trafficking victims fund.

There is also an assessment, under Title 18 United States Code section 2259A(a)(1), of not more than $17,000 if convicted of child pornography possession, under Title 18 United States Code section 2252A(a)(5)(B).
The second superseding indictment contains a notice of the United States' intent to pursue forfeiture under 18 U.S.C. section 2253 of any, one, visual depictions and books, magazines, periodicals, films, videotapes, and other matter containing visual depictions as set forth in 18 U.S.C. section 2253(a)(1); two, property, real or personal, constituting or traceable to gross profits or other proceeds obtained from certain offenses as described in 18 U.S.C. section 2253(a) and/or, three, property, real or personal, used or intended to be used to commit or to promote the commission of such offense or any property traceable to such property.

The Court must also award restitution, pursuant to Title 18 United States Code section 3663A, to the persons and entities victimized by the defendant's offense.

The Court must also award mandatory restitution, under Title 18 United States Code section 2259, for the full amount of the victim’s losses but not less than $3,000 per victim.
As a consequence of his guilty plea, the defendant must register as a sex offender in the jurisdiction or jurisdictions where he resides, is employed, or is a student, under the Sex Offender Registration and Notification Act.

THE COURT: Thank you, Mr. Khatib.

Now, if you would rise again, Mr. Limkin. You have heard the prosecutor explain the possible sentence to prison that you may receive, in addition, the possible fine and the -- he made a list of restitution issues that you may be required to pay. The restitution to the various victims has been outlined for you by the prosecution, and he has also mentioned earlier the forfeiture of property that is contained in the second superseding indictment.

Do you have any questions about that, what Mr. Khatib has outlined?

DEFENDANT: No, Your Honor.

THE COURT: And have you talked about it with Mr. Singh?

DEFENDANT: I have.

THE COURT: And has he answered your questions?

DEFENDANT: Yes, Your Honor.

(Transcript of Guilty Plea at pp. 12-14, ECF No. 75).

**5. Defendant Testified That He Was Voluntarily Pleading Guilty And That He Understood That Any Predictions About His Sentence By His Attorney Were Not Binding On The Court**

Defendant testified that he was pleading guilty by his own free will to the one count in the Second Superseding Indictment. (Transcript of Guilty Plea at p. 15, ECF No. 75). Defendant Limkin testified that he was not forced or threatened by anyone to plead guilty. (Id.)

Defendant also testified that he understood that his sentence would be decided by the Court and that any prediction or prophesy as to what his sentence might be was not binding on the

Court. (Id.) Defendant testified as follows:

THE COURT: Now, you don't have a plea agreement in this matter, but I want to ask you: Has anyone threatened you or anyone else, or forced you in any way to enter a guilty plea?

DEFENDANT: No, Your Honor.

THE COURT: Have you entered into this guilty plea between you and the -- your attorney and the government of your own free will?

DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that the predictions or prophecies that your attorney may have made to you or anyone else -- has anyone else made any predictions or prophecy to you as to what your sentence may be?

DEFENDANT: No, only my attorney, Your Honor.

THE COURT: Okay. Well, anyone else or your attorney are giving you their opinion. Your attorney, of course, is an experienced defense attorney. However, what you must understand, that the sentence is up to the judge. And the result here will be a sentence imposed by a judge. Do you understand that?

DEFENDANT: Yes, Your Honor.

(Id. at p. 15).

### 6. Defendant Freely And Voluntarily Testified As To The Factual Basis For His Guilty Plea To The Only Count In The Second Superseding Indictment

During the plea colloquy, the Government described the elements of the Possession of Child Pornography charge as provided in the only count in the Second Superseding Indictment. (Transcript of Guilty Plea at pp. 16-18, ECF No. 75). The

Government outlined the evidence that it intended to offer if the case were to proceed to trial. (Id.)

The Government explained that it recovered a Seagate hard drive from Defendant's possession on December 13, 2023, and that the hard drive contained a video file named 2022-07-3021-50-18-copy-copy.mp4. (Id. at p. 17). The Government described that the video filed was a recording of the Defendant moderating a video chat on his online Cultist Discord server. (Id. at pp. 17-18). In the video, Defendant Limkin uploaded an image of child pornography to the chat. (Id. at p. 18). The video shows the Defendant uploading an image depicting "the lascivious exhibition of the genitals of a minor female." (Id.) The Government explained that the image satisfied the federal definition of child pornography. (Id. at p. 17).

The Government described that the video met all of the elements of a Possession of Child Pornography charge pursuant to 18 U.S.C. § 2252A(a)(5)(B) because:

AUSA KHATIB: The minor depicted in the image was identified by the National Center for Missing and Exploited Children as a real minor from the Ukraine.

The defendant knew that such image was child pornography. By uploading the image of child pornography onto his Discord server, the defendant transported it using a means or facility of interstate or foreign commerce, namely, the Internet.

Further, the Seagate hard drive was not manufactured in Hawaii. The defendant knowingly possessed the image of child pornography contained within the video

> file on December 13, 2023.
>
> An FBI computer scientist analyzed that video file and determined that it is readily accessible on the Seagate hard drive. According to the file's metadata, it was copied, or moved, on September 24, 2023, and was last accessed on November 12th, 2023.

(Transcript of Guilty Plea at p. 18, ECF No. 75).

The Court asked Defendant Limkin to explain, in his own words, the conduct that he engaged in that made him guilty of the charge. (Id.) Defendant testified as to his conduct, under oath, as follows:

DEFENDANT: Your Honor, I was in possession of a hard drive, and on that hard drive there was a depiction of an image of a minor, child pornography.

THE COURT: I'm sorry. I didn't hear the last part.

DEFENDANT: There was an image of a depiction of a minor, of child pornography.

THE COURT: I didn't understand the last thing you said.

DEFENDANT: Child pornography.

THE COURT: Okay. So what computer was this?

DEFENDANT: It was a hard drive in my possession, a Seagate 1500-gigabyte hard drive.

THE COURT: That was yours?

DEFENDANT: Yes, Your Honor.

THE COURT: How did this image come to be on your computer?

DEFENDANT: I cannot recall, Your Honor. But when I was 16 there was a video recording, and the image was uploaded and the depiction was in that video recording.

THE COURT: Are you saying you didn’t do it?

DEFENDANT: No, Your Honor.

THE COURT: Well, so what exactly are you saying?

DEFENDANT: I am saying I possessed the image knowingly on the Seagate hard drive.

THE COURT: Well, I’m asking you how it got there.

DEFENDANT: It was an image on a server on Discord. The image was readily accessible to me, and by uploading that image and recording it, it was then in my possession.

THE COURT: So it was your computer?

DEFENDANT: Yes, Your Honor.

THE COURT: You knew where it was?

DEFENDANT: Yes, Your Honor.

THE COURT: Are you the person who uploaded it?

DEFENDANT: Yes. Yeah.

THE COURT: Okay. And that was back in September of ’23? Or earlier?

DEFENDANT: Earlier. The file -- the video file that was created was in 2022.

THE COURT: And did you look at this image?

DEFENDANT: When, Your Honor?

THE COURT: Anytime.

DEFENDANT: When it -- the file was created, yes.

THE COURT: And then was it available on your computer on December 12th, 2023?

DEFENDANT: Yes, Your Honor.

THE COURT: Did you possess that computer?

DEFENDANT: Yes, Your Honor.

THE COURT: Okay. So, now, tell me what the image was.

DEFENDANT: The image was of a minor in a lavicious [verbatim] manner.

THE COURT: Boy or girl?

DEFENDANT: Female, I believe, Your Honor.

THE COURT: And about what age?

DEFENDANT: I cannot determine the age, Your Honor.

THE COURT: Okay. Older than 12?

DEFENDANT: I believe so, yes, Your Honor.

THE COURT: Okay. And what -- tell me one of the images that you consider to be -- what's your own term?

DEFENDANT: Lavicious.

THE COURT: Okay. So tell me something that was lavicious [verbatim] in that image that you looked at.

DEFENDANT: The image was of a minor's genitalia area, Your Honor.

THE COURT: Was there some action or something happening with that?

DEFENDANT: I don't believe so, Your Honor.

THE COURT: It was just an image of genitalia of a young female woman?

DEFENDANT: Yes, Your Honor.

THE COURT: How long did this video last?

DEFENDANT: The video was I believe one hour and 33 minutes.

THE COURT: I assume there was some movement and things were happening in this movie?

DEFENDANT: The video is of a recording of a group chat. The image itself was uploaded into

the group chat and it was on the screen for, I'd like to say, less than five seconds. I'm not sure. It was very quick. The entire video isn't of child pornography, Your Honor.

THE COURT: But this was an inappropriate image that had a nature of sexual content of this minor?

DEFENDANT: I believe so, yes, Your Honor. Yes.

THE COURT: Okay. Are you satisfied, Mr. Khatib?

AUSA KHATIB: I am, Your Honor.

THE COURT: Okay. The Court finds that based upon the statements made by the defendant under oath to this Court there is a factual basis upon which the defendant may enter his plea.

How do you plead to the charge in the second superseding indictment, guilty or not guilty?

DEFENDANT: Guilty, Your Honor.

THE COURT: Since you acknowledge that you are in fact guilty as charged and since you know of your right to a trial, what the maximum possible punishment is, and since you are voluntarily pleading guilty, I accept your guilty plea and enter a judgment of guilty on your plea. I find that the charge against -- of the United States against Kalana Malu Limkin is fully -- is found to be fully -- that he is found to be fully competent and capable of entering an informed plea and that his plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing the essential elements of the offense, and his plea is therefore accepted. You are adjudged guilty of the offense.

(Transcript of Guilty Plea at pp. 19-23, ECF No. 75).

## **II. Defendant Did Not Receive Erroneous Or Inadequate Legal Advice Regarding His Potential Sentence**

A defendant may not change his plea solely because his attorney underestimated the severity of the sentence faced. United States v. Garcia, 909 F.2d 1346, 1348 (9th Cir. 1990) (explaining that generally an "erroneous prediction by a defense attorney concerning sentencing does not entitle a defendant to challenge his guilty plea"). Fear of receiving a harsh sentence, standing alone, does not constitute a "fair and just" reason to withdraw a guilty plea, even if counsel's initial advice as to length of plea turned out to be inaccurate. Shah v. United States, 878 F.2d 1156, 1162 (9th Cir. 1989).

Only in exceptional circumstances where a defendant's counsel has "grossly mischaracterized" the defendant's possible sentence will a defendant be allowed to withdraw his guilty plea. United States v. Briggs, 623 F.3d 724, 728-29 (9th Cir. 2010).

Defendant seeks to withdraw his guilty plea, in part, because he claims his court-appointed Attorney Gary Singh mischaracterized the sentence he would face by pleading guilty to the one count in the Second Superseding Indictment.

There are two preliminary issues with respect to Defendant's Motion to Withdraw His Guilty Plea.

**First**, Defendant's arguments are premised on a sentencing that has not yet occurred in this case.

On April 13, 2026, the Probation Officer filed the Presentence Investigation Report. (ECF No. 85). The Presentence

Report found that Defendant has a Total Offense Level of 32 and a Criminal History Category of I. (Id. at ¶ 105). The Presentence Report found that the maximum guideline range was greater than the term of imprisonment that is statutorily authorized, which rendered the applicable guideline range to be the maximum provided by statute: 120 months. (Id.)

In his May 8, 2026 Motion to Withdraw His Guilty Plea, Defendant claims that Attorney Singh erroneously predicted that his sentence would be "not more than 5 years." (Def.'s Motion to Withdraw Guilty Plea, ECF No. 88). Defendant also claims that he was not made aware that his sentencing guidelines would be 121-151 months. (Id.)

The Court has not ruled on the calculations in the Presentence Report and has not yet sentenced Defendant to a term of imprisonment. The guideline calculations are advisory and are not binding on the Court. See United States v. Booker, 543 U.S. 220, 267-68 (2005). The Court, for purposes of the Motion to Withdraw Defendant's Guilty Plea, will consider Defendant's argument that he may receive a sentence higher than predicted by Attorney Singh.

**Second**, Defendant did not provide a sworn Declaration or Affidavit in support of his Motion to Withdraw His Guilty Plea.

At the February 13, 2025 change of plea hearing, the Court informed Defendant Limkin that he faced a maximum possible sentence of incarceration of ten years. (Transcript of Guilty Plea at pp. 12-14, ECF No. 75). Defendant testified under oath

that he was aware that he could be sentenced up to ten years' imprisonment at the time he pled guilty. (Id.) The Court informed Defendant that he could not withdraw his guilty plea if the sentence that he received was higher than he expected. (Id. at p. 11). Defendant swore under oath that he understood that he could not withdraw his guilty plea even if he received a sentence higher than expected. (Id.)

The Court explained to Defendant that while Attorney Singh may have provided Defendant with a prediction as to the calculation of his sentencing guidelines or the possible sentence he might receive, the decision as to his sentence was up to the Court alone. (Id. at p. 15). Defendant confirmed, under oath, that he understood. (Id.)

In evaluating Defendant's request to withdraw his guilty plea, the statements Defendant made under oath at the February 13, 2023 guilty plea hearing "carry a strong presumption of veracity in subsequent proceedings attacking the plea." Ross, 511 F.3d at 1236. This is especially true when the defendant did not provide an affidavit under penalty of perjury in support of his Motion to Withdraw Guilty Plea.

**1. Attorney Singh Did Not Grossly Mischaracterize Defendant's Possible Term Of Incarceration**

Attorney Singh did not "grossly mischaracterize" Defendant's possible sentence. This is true even assuming Attorney Singh told Defendant he would not receive more than five years'

imprisonment and the Court ultimately sentences Defendant to the maximum term of ten years' imprisonment.

At most, the difference between Attorney Singh's alleged prediction of 5 years, and the possible maximum sentence of 10 years' imprisonment is 60 months. A 60-month discrepancy is not a "gross mischaracterization" of the potential sentence in Defendant Limkin's case.

In United States v. Gordon, 151 F.4th 1090, 1098 (9th Cir. 2025), the defendant claimed his attorney told him he would face a sentencing exposure of approximately 27-33 months imprisonment. Id. at 1098. The defendant was sentenced to 87-months' imprisonment. Id. The defendant was sentenced to 60-months more than the defendant claimed was predicted by his attorney. The defendant argued that the 60-month discrepancy was a "gross mischaracterization" of his possible sentence. Id. The Ninth Circuit Court of Appeals did not agree. The Appellate Court held that the 60-month discrepancy between counsel's alleged representation of defendant's sentencing exposure and the defendant's actual sentence was not a gross mischaracterization. Id.

Just as in Gordon, the alleged 60-month discrepancy here does not amount to a gross mischaracterization of Defendant's sentencing exposure. See also Briggs, 623 F.3d at 729 (finding 124-month discrepancy was not a "gross mischaracterization" to support the defendant's motion to withdraw his guilty plea).

Defendant relies on United States v. Davis, 428 F.3d 802,

805-08 (9th Cir. 2005). In Davis, the defendant was 72 years old and faced a maximum sentence of eight years' imprisonment. Id. at 803. The sentencing guidelines were mandatory at the time the defendant in Davis was sentenced. Id. at 808. Despite the mandatory sentencing guidelines, the defendant's attorney in Davis predicted a sentence of probation. Id. at 805 n.2. The defendant attempted to withdraw his guilty plea when he received the Presentence Investigation Report that set forth a term of imprisonment of eight years. Id. at 804. The sentencing court denied the defendant's motion to withdraw his guilty plea. Id. The sentencing court "found that defendant was likely to die within the next five years because of a heart condition, but declined to depart downward; instead the court sentenced defendant to the statutory maximum of eight years." Id.

On appeal, the Ninth Circuit Court of Appeals ruled that the defendant's attorney grossly mischaracterized defendant's possible sentence when he predicted the defendant would get probation. Id. at 805. The Ninth Circuit Court of Appeals held that the attorney's advice grossly mischaracterized the sentence defendant faced because the sentencing guidelines were mandatory and would have required the sentencing court to depart 20 to 30 levels. Id. at 805, n.2.

Unlike in Davis, the sentencing guidelines in this case are not mandatory. Also unlike in Davis, Attorney Singh did not erroneously predict that Defendant may receive a non-custodial sentence of probation. None of the other circumstances,

including the age and health of the elderly defendant, apply here that would support a "fair and just" reason for withdrawal of the guilty plea as in Davis.

The allegations about Attorney Singh's prediction of Defendant's sentence, even if true, do not support withdrawal of Defendant's guilty plea. Gordon, 151 F.4th at 1098; Briggs, 623 F.3d at 729.

**2. Attorney Singh Did Not Grossly Mischaracterize Defendant's Possible Sentencing Guidelines**

During the guilty plea colloquy, the Court informed Defendant about the procedures for sentencing. (Transcript of Guilty Plea at pp. 10-12, ECF No. 75). The Court ensured Defendant was made aware of the procedures for drafting the Presentence Investigation Report and the calculation of the sentencing guidelines. (Id.) The Court confirmed that Defendant Limkin had discussed the sentencing procedures and potential sentencing guidelines with Attorney Singh. (Id.) The transcript provides, as follows:

THE COURT: Now, we're going to talk about sentencing guidelines. United States law establishes detailed sentencing guidelines for people convicted of federal crimes. Before I accept your plea of guilty, it's important that you understand certain aspects of the guidelines. Have you and Mr. Singh talked about how the Sentencing Commission guidelines might apply in your case?

DEFENDANT: Yes, we have, Your Honor.

THE COURT: Now, you understand that we will not be able to determine the guidelines for your case until after a presentence report has been completed and you and the government and your attorney read it and have an opportunity to object to anything in it; do you understand that?

DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that after it has been determined what guidelines apply to a case the judge has the authority in some circumstances to impose a sentence that is more severe or less severe than the sentence called for in the guidelines?

DEFENDANT: Yes, Your Honor. Understand.

THE COURT: You did understand that?

DEFENDANT: I do understand, yes.

(Transcript of Guilty Plea at p. 10-11, ECF No. 75).

The Court informed Defendant Limkin that while Attorney Singh may have provided Defendant with a prediction as to the calculation of his sentencing guidelines, the decision as to his sentence was up to the Court alone. (Transcript of Guilty Plea at p. 15, ECF No. 75). Defendant confirmed, under oath, that he understood. (Id.)

Defendant alleges in his Motion to Withdraw Guilty Plea that Attorney Singh did not inform him that his sentencing guidelines "could be more than the maximum sentence." (Def.'s Motion at p. 5, ECF No. 88). Defendant's Motion to Withdraw misunderstands the sentencing guidelines.

As a matter of law, Defendant's sentencing guidelines cannot be higher than the statutory maximum sentence. The Presentence

Report properly explains in paragraph 105 that "since the maximum of the guideline range is greater than the statutorily authorized maximum sentence, the applicable guideline range is 120 months." (Presentence Report at ¶ 105, ECF No. 85, citing to United States Sentencing Guideline 5G1.1(c)(1)).

There is no basis for withdrawal based on the calculation of the sentencing guidelines. Contrary to Defendant's position, his sentencing guidelines are not higher than his possible statutory sentence of ten years' imprisonment. Defendant has not pointed to any alleged error by Attorney Singh in his representation with respect to the calculation of the sentencing guidelines.

## II. Defendant's Expert Report Does Not Provide A Basis To Withdraw His Guilty Plea

Unsupported claims of innocence do not provide a fair and just reason to withdraw a guilty plea. United States v. Turner, 898 F.2d 705, 713 (9th Cir. 1990).

Defendant argues that he should be allowed to withdraw his guilty plea based on a newly obtained expert report. Defendant seeks to withdraw his plea in order to dispute whether he "accessed" child pornography on or about December 13, 2023.

Defendant's argument is misplaced. As explained below, Defendant was not charged with "accessing" child pornography on or about December 13, 2023. Defendant was charged with "possession." Defendant's expert report does not demonstrate innocence of the charged conduct or provide any other basis to

withdraw Defendant's guilty plea.

### A. Defendant Is Charged With Possession Of Child Pornography

The Second Superseding Indictment charged Defendant with one count of "Possession of Child Pornography," as follows:

> On or about December 13, 2023, within the District of Hawaii, KALANA LIMKIN, the defendant, did **knowingly possess** material, namely a Seagate 1500 gigabyte hard drive, that contained an image of child pornography as defined in Title 18, United States Code, Section 2256(8), such image having been shipped and transported using any means and facility of interstate and foreign commerce, and which was produced using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce, by any means, including by computer.
>
> In violation of Title 18, United States Code, Sections 2252A(a)(5)(B) and 2252A(b)(2).

(Second Superseding Indictment, ECF No. 54) (emphasis added).

Defendant's Motion to Withdraw His Guilty Plea relies, in part, on a report completed by Josiah Roloff. The report was prepared based on information contained in the Presentence Investigation Report and Mr. Roloff's examination of the Seagate external hard drive that Defendant possessed on December 13, 2023. It is unclear what other evidence or information Mr. Roloff reviewed in preparing the report.

Mr. Roloff's report states that he could not determine the date on which Defendant last accessed the image of child pornography that was found on Defendant's Seagate external hard drive that was in Defendant's possession on December 13, 2023. The report does not undermine Defendant's guilty plea and is not

relevant.

A conviction under Section 2252A(a)(5)(B) can be sustained under either a theory that: (1) a defendant "knowingly possessed" child pornography or (2) a defendant "knowingly accessed with intent to view" child pornography.[1] United States v. Solomon, 2025 WL 1169132, at *3 (D. Nev. Apr. 21, 2025).

Here, Defendant is charged with knowingly possessing child pornography on or about December 13, 2023. AUSA Khatib confirmed at the May 12, 2026 hearing that the Government elected to proceed on a theory of "possession" of child pornography, and not on a theory of "access with intent to view" child pornography.

Defendant's reliance on Mr. Roloff's report to argue that he did not knowingly access the image on December 13, 2023 misunderstands the issue. Defendant's conviction is not premised on him accessing the child pornography image on that date. Mr. Roloff's report is unhelpful because it does not address the charged conduct. There is no dispute that Defendant knowingly

[1] In 2008, in response to the Ninth Circuit Court of Appeals' decision in United States v. Kuchinski, 469 F.3d 853, 863 (9th Cir. 2006), Congress amended the possession offense in Section 2252A to also prohibit "knowingly accessing with intent to view" child pornography. See Enhancing the Effective Child Pornography Prosecution Act of 2007, Pub. L. No. 110-358, § 203(b), 122 Stat. 4001, 4003 (2008). Senate Report No. 110-332 said of the amendment: "This section fills a gap in existing law that has led some courts to overturn convictions of possessors of child pornography. It amends the child pornography possession offense to clarify that it also covers knowingly accessing child pornography on the Internet with the intent to view child pornography." See United States v. Partin, 565 Fed. Appx. 626, 626-27 (9th Cir. 2014); United States v. Lewis, 2024 WL 701006, at *2, *2 n.2 (9th Cir. Feb. 21, 2024), cert. denied, 145 S. Ct. 307 (2024).

possessed the image of child pornography on or about December 13, 2023, as Defendant admitted in his plea colloquy. Mr. Roloff's report does not support withdrawal of Defendant's guilty plea.

**B. Defendant Testified Under Oath That He Possessed Child Pornography On The Date Charged In The Second Superseding Indictment**

Section 2252A(a)(5)(B) does not define what it means to "possess" child pornography. The Ninth Circuit Court of Appeals has interpreted the term "possession" in the context of a Section 2252A conviction to require that the defendant "exercise dominion and control" over the image. United States v. Romm, 455 F.3d 990, 999 (9th Cir. 2006).

The mere existence of child pornography in the cache or in unallocated space on a computer or hard drive may be insufficient, by itself, to prove a defendant's knowing possession of child pornography. United States v. Kuchinski, 469 F.3d 853, 863 (9th Cir. 2006); see United States v. Flyer, 633 F.3d 911, 919-20 (9th Cir. 2011). In order for a defendant to be convicted of possession of child pornography, there must be evidence that the defendant knew of the presence of the image on the computer, hard drive, or cloud storage space over which the defendant exercised dominion and control. See Romm, 455 F.3d at 999.

Here, Defendant testified under oath that he knowingly possessed child pornography on or about December 13, 2023.

Defendant argues that the Court's colloquy was

insufficient. Defendant claims that the Court failed to inquire whether Defendant knowingly possessed child pornography after he turned 18 years old. Defendant's argument is belied by the record. Defendant turned 18 years old in August 2023. Defendant testified that he knowingly possessed child pornography in December 2023, after he turned 18 years old.

Defendant testified as to his conduct, under oath, as follows:

> **DEFENDANT: Your Honor, I was in possession of a hard drive, and on that hard drive there was a depiction of an image of a minor, child pornography.**
>
> THE COURT: I'm sorry. I didn't hear the last part.
>
> **DEFENDANT: There was an image of a depiction of a minor, of child pornography.**
>
> THE COURT: I didn't understand the last thing you said.
>
> **DEFENDANT: Child pornography.**
>
> **THE COURT: Okay. So what computer was this?**
>
> **DEFENDANT: It was a hard drive in my possession, a Seagate 1500-gigabyte hard drive.**
>
> **THE COURT: That was yours?**
>
> **DEFENDANT: Yes, Your Honor.**
>
> THE COURT: How did this image come to be on your computer?
>
> DEFENDANT: I cannot recall, Your Honor. But when I was 16 there was a video recording, and the image was uploaded and the depiction was in that video recording.
>
> THE COURT: Are you saying you didn't do it?

DEFENDANT: No, Your Honor.

THE COURT: Well, so what exactly are you saying?

DEFENDANT: **I am saying I possessed the image knowingly on the Seagate hard drive.**

THE COURT: Well, I'm asking you how it got there.

DEFENDANT: It was an image on a server on Discord. The image was readily accessible to me, and by uploading that image and recording it, it was then in my possession.

**THE COURT: So it was your computer?**

**DEFENDANT: Yes, Your Honor.**

**THE COURT: You knew where it was?**

**DEFENDANT: Yes, Your Honor.**

**THE COURT: Are you the person who uploaded it?**

**DEFENDANT: Yes. Yeah.**

THE COURT: Okay. And that was back in September of '23? Or earlier?

DEFENDANT: Earlier. The file -- the video file that was created was in 2022.

THE COURT: And did you look at this image?

DEFENDANT: When, Your Honor?

THE COURT: Anytime.

DEFENDANT: When it -- the file was created, yes.

**THE COURT: And then was it available on your computer on December 12th, 2023?**

**DEFENDANT: Yes, Your Honor.**

**THE COURT: Did you possess that computer?**

**DEFENDANT: Yes, Your Honor.**

THE COURT: Okay. So, now, tell me what the image was.

DEFENDANT: The image was of a minor in a lavicious [verbatim] manner.

THE COURT: Boy or girl?

DEFENDANT: Female, I believe, Your Honor.

THE COURT: And about what age?

DEFENDANT: I cannot determine the age, Your Honor.

THE COURT: Okay. Older than 12?

DEFENDANT: I believe so, yes, Your Honor.

THE COURT: Okay. And what -- tell me one of the images that you consider to be -- what's your own term?

DEFENDANT: Lavicious.

THE COURT: Okay. So tell me something that was lavicious [verbatim] in that image that you looked at.

**DEFENDANT: The image was of a minor's genitalia area, Your Honor.**

THE COURT: Was there some action or something happening with that?

DEFENDANT: I don't believe so, Your Honor.

THE COURT: It was just an image of genitalia of a young female woman?

DEFENDANT: Yes, Your Honor.

THE COURT: How long did this video last?

DEFENDANT: The video was I believe one hour and 33 minutes.

THE COURT: I assume there was some movement and things were happening in this movie?

DEFENDANT: The video is of a recording of a group chat. The image itself was uploaded into

the group chat and it was on the screen for, I'd like to say, less than five seconds. I'm not sure. It was very quick. The entire video isn't of child pornography, Your Honor.

THE COURT: But this was an inappropriate image that had a nature of sexual content of this minor?

DEFENDANT: I believe so, yes, Your Honor. Yes.

THE COURT: Okay. Are you satisfied, Mr. Khatib?

AUSA KHATIB: I am, Your Honor.

THE COURT: Okay. The Court finds that based upon the statements made by the defendant under oath to this Court there is a factual basis upon which the defendant may enter his plea.

How do you plead to the charge in the second superseding indictment, guilty or not guilty?

DEFENDANT: Guilty, Your Honor.

THE COURT: Since you acknowledge that you are in fact guilty as charged and since you know of your right to a trial, what the maximum possible punishment is, and since you are voluntarily pleading guilty, I accept your guilty plea and enter a judgment of guilty on your plea. I find that the charge against -- of the United States against Kalana Malu Limkin is fully -- is found to be fully -- that he is found to be fully competent and capable of entering an informed plea and that his plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing the essential elements of the offense, and his plea is therefore accepted. You are adjudged guilty of the offense.

(Transcript of Guilty Plea at pp. 19-23, ECF No. 75) (emphasis added).

The colloquy demonstrates that there was a sufficient factual basis for Defendant to plead guilty to possession of child pornography. Defendant testified under oath that he knowingly possessed child pornography in December 2023 after he was 18 years old.

**C. Defendant Exercised Dominion And Control Over Child Pornography On The Date Charged In The Second Superseding Indictment**

In addition to Defendant's sworn testimony, there is ample evidence that Defendant exercised dominion and control over child pornography on or about the date charged in the Second Superseding Indictment.

A defendant's dominion and control over child pornography may be proved by evidence of the defendant's experience, expertise, and behavior with respect to viewing or possessing child pornography. Romm, 455 F.3d at 1000-01. Evidence that a defendant knowingly saved, downloaded, moved, used, manipulated, or deleted child pornography may be used to show the defendant exercised dominion or control over child pornography. Id. In addition, a defendant exercises dominion or control over child pornography when he knew that the image was being downloaded to and saved to a device or server that the defendant controlled or when he knew the image would be saved to the device's cache or unallocated space. Id.

In contrast, a child pornography image that was accidentally viewed through the occurrence of an unintended "pop-up" screen

usually does not constitute knowing possession of child pornography. Id. at 1000.

Here, there is considerable evidence to demonstrate that Defendant Limkin knowingly possessed child pornography in December 2023. The evidence demonstrates that Defendant did not accidentally possess child pornography.

Defendant Limkin was a sophisticated internet user who targeted susceptible, young girls, normally between 12 and 17 years of age, online and groomed them to send him nude photographs and videos. (Presentence Report at ¶ 9, ECF No. 85). Defendant encouraged the young girls to engage in self-harm, by cutting his name into their skin. (Id.) If they did not comply, the girls often faced retribution in the form of extortion. (Id.)

On December 13, 2023, investigators executed a search warrant at Defendant's residence and arrested him. (Id. at ¶ 24). Defendant waived his constitutional rights and agreed to be interviewed. (Id.) Defendant Limkin admitted to creating the Discord server "Cultist" and admitted to asking minor females to send him nude photographs of themselves and admitted to receiving child pornography links and images via his Discord server. (Id.)

Defendant Limkin also admitted in December 2023 that he was currently in possession of child pornography files which were later recovered from various digital devices that Defendant owned, possessed, and controlled. (Id. at ¶¶ 24-34).

Investigators recovered a Seagate hard drive in Defendant's

possession that contained a recording of a video chat on Defendant's Cultist Discord server. (Transcript of Guilty Plea at p. 18, ECF No. 75). The recording includes a portion of the video where the Defendant uploaded an image of child pornography. (Id.) The image depicted a minor female engaged in the lascivious exhibition of her genitals. (Id.) The minor depicted in the image was identified by the National Center for Missing and Exploited Children as a real minor from the Ukraine. (Id.)

An FBI computer scientist analyzed that video file and determined that it was readily accessible on the Seagate hard drive in Defendant's possession on December 13, 2023. (Gov't Expert Report attached as Ex. I to Gov't Second Supp. Sentencing Statement, ECF No. 84-9). The Government's computer expert found that the child pornography image was copied or moved on September 24, 2023 and last accessed on November 12, 2023. (Id.) Defendant exercised dominion and control over the child pornography image after Defendant was 18 years old. (Id.)

Multiple minor victims participated in forensic interviews where they admitted that they had sent Defendant Limkin child pornography at his request. (Presentence Investigation Report at ¶¶ 35-47, ECF No. 85). The minor victims stated that Defendant Limkin also sent them child pornography that he possessed and often participated in creating. (Id.)

The Presentence Investigation Report also reflects that Defendant created an online account with Mega Limited, a cloud storage service based in New Zealand. (Id. at ¶ 76).

Defendant's Mega Limited account was created on October 18, 2023, after Defendant turned 18 years old. (Id.) Defendant's Mega Limited account contained 42 images of child pornography over which Defendant exercised dominion and control. (Id.)

The record conclusively demonstrates that Defendant knowingly exercised dominion and control over child pornography in December 2023. Romm, 455 F.3d at 1000-01. Both the evidence and Defendant's own sworn testimony demonstrate that Defendant Limkin knowingly saved, downloaded, moved, used, manipulated, and deleted child pornography after he turned 18 years old. Id.; United States v. Busby, 2014 WL 1153712, *4 (N.D. Cal. Mar. 20, 2014); see United States v. Cnockaert, 2013 WL 324020, at *1 (D. Mont. Jan. 28, 2013) (placing child pornography pictures in a folder unquestionably is exerting dominion and control over the images).

Defendant Limkin knowingly sought out child pornography on the Discord server and on websites, and he used various electronic devices, computers, hard drives, and cloud storage services to store, use, and possess child pornography after the date when he turned 18 years old. Romm, 455 F.3d at 1000-01; see United States v. Zarn, 365 Fed. Appx. 838, 839 (9th Cir. 2010) (finding the defendant exercised dominion and control over child pornography when the defendant repeatedly used specific search terms and web addresses to seek out child pornography and controlled devices to display and move images).

Defendant's history creating, producing, and possessing

child pornography constitutes relevant conduct that can be considered by the Court at sentencing. The conduct is properly included in the Presentence Report. United States v. Williamson, 439 F.3d 1125, 1139-40 (9th Cir. 2006); United States v. Nance, 611 F.3d 409, 415 (7th Cir. 2010); see also United States v. Hodge, 805 F.3d 675, 682 (6th Cir. 2015) (finding conduct that defendant recorded his stepdaughter exiting the shower naked was logically related relevant conduct and allowed to be considered in sentencing defendant for receipt of child pornography).

The fact that Defendant possessed some of the child pornography prior to turning 18 years old does not alter the analysis. United States v. Hough, 276 F.3d 884, 897 (6th Cir. 2002) (finding juvenile conduct in a dismissed count was relevant conduct to be considered at sentencing); United States v. Sparks, 309 Fed. Appx. 713, 717 (4th Cir. 2009) (court at sentencing could consider relevant conduct that occurred when defendant was a juvenile participant).

Nothing in Mr. Roloff's report provides a fair and just reason to support withdrawal of Defendant's guilty plea. Both the evidence of Defendant's conduct with respect to child pornography and his sworn testimony demonstrate that Defendant knowingly possessed child pornography on or about the date charged in the Second Superseding Indictment. Ross, 511 F.3d at 1236-37.

### D. There Is No Evidence That Defendant "Felt Pressured" To Change His Plea

Defendant Limkin additionally seeks to withdraw his guilty plea because he now claims that he felt pressured to enter his guilty plea on February 13, 2025.

A change of heart is not a fair and just reason that entitles a defendant to withdraw a guilty plea. Ensminger, 567 F.3d at 593.

#### 1. Defendant Testified Under Oath That He Was Not Pressured Or Threatened To Plead Guilty

Defendant's argument in his Motion to Withdraw His Guilty Plea that he was pressured to plead guilty, again, directly contradicts Defendant's sworn testimony.

At the February 13, 2025 hearing, the Court directly asked Defendant if he was threatened or forced to plead guilty. Defendant testified under oath that he was not. The Court inquired, as follows:

THE COURT: Now, you don't have a plea agreement in this matter, but I want to ask you: Has anyone threatened you or anyone else, or forced you in any way to enter a guilty plea?

DEFENDANT: No, Your Honor.

THE COURT: Have you entered into this guilty plea between you and the -- your attorney and the government of your own free will?

DEFENDANT: Yes, Your Honor.

(Transcript of Guilty Plea at pp. 12, 15, ECF No. 75).

There is no evidence that Defendant was threatened or forced to plead guilty.

**2. The Timing Of The Second Superseding Indictment Does Not Provide A Basis For Defendant To Withdraw His Guilty Plea**

Defendant also argues that he felt pressured because he changed his plea the same day as he received the Second Superseding Indictment. This argument is meritless. As explained above, the charge in the Second Superseding Indictment was identical to the charge in the First Superseding Indictment. (ECF No. 36).

On February 12, 2025, the Court held a hearing to discuss trial and various procedural matters. (ECF No. 53). At the hearing, AUSA Khatib explained that there was an error in the First Superseding Indictment because it contained duplicative forfeiture allegations. AUSA Khatib stated that the United States would seek a Second Superseding Indictment to correct the clerical error.

The following day, on February 13, 2025, the grand jury returned the Second Superseding Indictment. (ECF No. 54). The Second Superseding Indictment corrected the forfeiture allegation by deleting the duplicate language.

The Court inquired with Defendant at the February 13, 2025 change of plea hearing if Defendant had the opportunity to review the Second Superseding Indictment and to ask Attorney Singh any questions about it. (Transcript of Guilty Plea at pp. 7, 12, ECF

No. 75). Defendant swore under oath that he read and understood the charge and had the opportunity to discuss any questions with counsel. (Id.) The Second Superseding Indictment was read to the Defendant at the hearing and the Court again asked Defendant if he had any questions about it. Defendant testified that he did not.

The timing of the Second Superseding Indictment does not provide any basis for Defendant to withdraw his guilty plea.

**3. The Identity Of The Minor Victim In The Child Pornography Image Does Not Provide A Basis For Defendant To Withdraw His Guilty Plea**

Defendant claims he should be allowed to withdraw his guilty plea because prior to pleading guilty he was told that the minor victim in the child pornography image he possessed had been identified.

Defendant's argument is without merit. The specific identity of the minor victim is not required to be disclosed to the Defendant for him to be guilty pursuant to 18 U.S.C. § 2252A(b)(2). The minor victim depicted in the image of child pornography possessed by Defendant was identified by the National Center for Missing and Exploited Children as a real minor child from Ukraine. (Transcript of Guilty Plea at p. 18, ECF No. 75; see also Presentence Report at ¶ 53, ECF No. 85).

Disclosure of the minor's name is irrelevant to the charge and does not provide a basis for Defendant to withdraw his plea. A violation of Section 2252A arises where the child pornography

involves either a real minor or a virtual minor that is indistinguishable from that of a real minor engaging in sexually explicit conduct. 18 U.S.C. § 2256(8); United States v. Dudeck, 657 F.3d 424, (6th Cir. 2011); see United States v. Trahan, 111 F.4th 185, 195 n.7 (1st Cir. 2024).

Defendant was not charged under Section 2252, which is limited to only actual minors engaged in sexually explicit conduct. Defendant admitted in his plea colloquy that he knowingly possessed the image of child pornography which he was aware involved a minor female child engaged in sexually explicit conduct. (Guilty Plea Transcript at pp. 21-22, ECF No. 75). The minor depicted in the image was identified by the National Center for Missing and Exploited Children as a real minor from the Ukraine. (Id. at p. 18). The minor victim's name does not need to be identified in the Presentence Report for Defendant Limkin's guilty plea to be valid.

None of the claims in Defendant's Motion provides a fair and just reason to allow Defendant to withdraw his guilty plea. Nostratis, 321 F.3d at 1208.

The Court engaged in a plea colloquy that demonstrated that Defendant understood the charges. See Peterson, 995 F.3d at 1067. Defendant knowingly and voluntarily pled guilty, and there was a factual basis for Defendant's plea to possession of child pornography in December 2023. There was no deficiency in the plea colloquy that would support withdrawal of Defendant's guilty plea. Id.

## CONCLUSION

Defendant's Motion to Withdraw Guilty Plea (ECF No. 88) is **DENIED.**

DATED: June 23, 2026, Honolulu, Hawaii.

IT IS SO ORDERED.

Helen Gillmor
United States District Judge